**Howard D. COATES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A01–9408–CR–249.

Court of Appeals of Indiana,
First District.

April 28, 1995.

Transfer Denied July 3, 1995.

Jeffery L. Lantz, Jon Aarstad, Evansville, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Howard D. Coates appeals from his conviction for operating a motor vehicle after having been adjudged an habitual traffic offender, a Class D felony. We affirm.

### ISSUES

Coates presents three issues on appeal, which we consolidate and restate as:

1. Whether the trial court erred when it admitted evidence obtained in an investigatory stop of Coates' vehicle because police lacked a reasonable suspicion that Coates was driving with a suspended license.

2. Whether the trial court erred when it admitted into evidence certain copies of Coates' Bureau of Motor Vehicles driving records.

### FACTS

On December 19, 1993, at approximately 4:00 p.m., Carolyn Presley reported to Evansville police a domestic violence disturbance at her residence. When Officers Brett Hilsmeyer and Donald Thompson arrived at Presley's apartment, she stated that she had an argument with Coates, who had been residing with Presley and her children on and off for about five years. Presley also informed police that Coates had left the residence before police arrived, that he was driving a late-model pick-up truck with distinctive features, and that Coates' driver's license was suspended.

Thereafter, Officers Hilsmeyer and Thompson left Presley's residence and resumed their regular patrol. At about 7:50 p.m. that same day, the officers observed a pick-up traveling in Evansville which matched the description given by Presley. Although they did not witness any moving violations, the officers pulled their patrol car behind the truck and activated the flashing lights. Once the truck stopped in a nearby parking lot, Officers Hilsmeyer and Thompson approached the truck and asked the driver for his driver's license and vehicle registration. The driver of the vehicle was

Coates. Coates stated that his license was suspended. The police then verified Coates' information, and learned that he was an habitual traffic offender and that his driver's license had been suspended from February 10, 1993, until February 9, 2003. Coates was placed under arrest.

Coates was charged with operating a motor vehicle after having been adjudged an habitual traffic offender, a Class D felony. Coates filed a motion to suppress and requested that the trial court suppress "the evidence and statements obtained after the December 19, 1993, stop . . . ." Record at 17–18. After a hearing, the trial court denied Coates' motion. Following a jury trial, Coates was convicted as charged and sentenced to three years imprisonment.

## DISCUSSION AND DECISION

### Issue One: Investigatory Stop

Coates first contends the trial court erred when it admitted his statement to police that he had a suspended license and other evidence obtained after the investigatory stop. Specifically, Coates asserts that the arresting officers' reliance on "the unconfirmed report of a lay person" that Coates' license was suspended gave police "neither probable cause to arrest [him] nor an articulable suspicion to justify an investigatory stop." Brief of Appellant at 4–5. We disagree.

■ First, Coates has failed to preserve this issue for appellate review. In his motion to suppress filed before trial, Coates asserted that the investigatory stop was invalid. His motion was denied after a hearing. However, during his jury trial, Coates did not object to the admission of any evidence on the grounds that the investigatory stop was invalid. "Denial of a pretrial motion to suppress is not a final ruling; to preserve error, objection must be made when the evidence is introduced at trial." *Helton v. State* (1989), Ind., 539 N.E.2d 956, 957. This is because the error occurs with admission of the evidence. *Id.* Since Coates failed to object at trial, this issue has been waived.

■ Even absent waiver, Coates is not entitled to relief. Under appropriate circumstances, the police may stop a vehicle to investigate briefly the possibility of criminal activity, without having probable cause to make an arrest. *State v. Nesius* (1990), Ind. App., 548 N.E.2d 1201, 1203. In order to justify an investigatory stop, the police officer must be able to point to specific and articulable facts which, when considered together with the rational inferences drawn from those facts, create a reasonable suspicion of criminal conduct on the part of the vehicle's occupants. *Id.* The grounds for this suspicion must be based on the totality of the circumstances. *Id.*

We addressed a similar issue in *State v. Smith* (1994), Ind.App., 638 N.E.2d 1353. There, the arresting officer heard a police dispatch broadcast concerning a potential drunk driver which was based on a 911 call and on citizens band radio reports from a number of truck drivers. *Id.* at 1354. The dispatcher reported the license plate number, and make, model and color of the pick-up truck that had been observed by the callers. *Id.* Subsequently, a police officer observed a pickup with the same characteristics and a license plate number matching the one identified in the dispatch. *Id.* He then pulled over the truck and arrested the defendant, Smith, for drunk driving. *Id.*

Smith filed a motion to suppress. The trial court granted the motion and found that the officer's stop of the vehicle was illegal because "no police officer had personally observed any violation of traffic laws or impaired driving." *Id.* at 1355. On appeal, we reversed and held "[a]s a matter of law, that the specific and articulable facts possessed by Officer Jones gave him a reasonable suspicion that Smith's pickup was being operated by an impaired driver sufficient to sustain the legality of the investigatory stop." *Id.* at 1356. In other words, the fact that no traffic violations had occurred during the arresting officer's personal observations of the vehicle prior to the stop was not dispositive. A citizen's report to the dispatcher was adequate to provide the arresting officer with a "reasonable suspicion." *See id.*

■ The same reasoning applies here. Coates' girlfriend, Presley, informed Officers Hilsmeyer and Thompson that Coates had

left her residence, that his driver's license was suspended and that he was driving a distinctive pick-up truck. A few hours later, the officers observed a vehicle matching Presley's description of Coates' pick-up. Although they did not observe any moving violations, the officers stopped the vehicle and Coates was driving. Coates then admitted that his driver's license was, in fact, suspended.

We agree with the State that, "the specific and articulable facts possessed by the officers gave them a reasonable suspicion that Coates was operating a vehicle while his license was suspended sufficient to sustain the legality of the investigatory stop." Brief of Appellee at 7–8. Thus, we hold that the trial court did not err when it admitted Coates' statement to police made during the investigatory stop of his vehicle and any evidence obtained thereafter.

**Issue Two: Admission of Driving Records**

Coates next contends the trial court erred when it admitted into evidence copies of several documents obtained from the Bureau of Motor Vehicles ("BMV"), which were proffered by the State collectively as Exhibit 1. We disagree.

Exhibit 1 was offered into evidence pursuant to Trial Rule 44(A) and Evidence Rule 902 during the direct examination of Officer Hilsmeyer. The first document was a computer printout which provided:

I, Gilbert L. Holmes, Commissioner of the Indiana Bureau of Motor Vehicles and custodian of the Records therein, hereby certify that the attached is a full, true and complete copy of the record as it appears in the files of the Indiana Bureau of Motor Vehicles.

In testimony whereof, I and my duly authorized representative execute this certification and affix the seal of the Indiana Bureau of Motor Vehicles this eight [sic] day of March, 1994.

Record at 223. The stamped signature of "Gilbert L. Holmes, Commissioner" appeared beneath the certification. Then, directly below Holmes' stamped signature were the computer-generated initials "DCM." Record at 223.

Following the certification, pages 2, 3 and 4 consisted of a computer printout of Coates' "Indiana Official Driver Record." Record at 223. Page 5 was entitled "Certification of Notice Mailed" and also bore the handwritten initials of "DCM," a Certification Clerk. Record at 223. Further, pages 6 and 7 included copies of two letters entitled "Habitual Traffic Violator Notice of Suspension," and stated that Coates was an habitual traffic violator and that his driving privileges had been suspended for a ten-year period effective February 10, 1993. Record at 223. The letters were identical except for Coates' address. Pages 8 and 9 consisted of copies of a traffic citation showing that on October 28, 1992, Coates' driver's license had been suspended for one year. Finally, pages 10 and 11 of Exhibit 1 included two "Indiana Abstract of Court Record[s]," which indicated that Coates had been convicted of Operating While Intoxicated on April 4, 1986, and on April 23, 1987. Record at 223.

### A. Authentication

■ Coates first asserts that the BMV documents in Exhibit 1 were not properly authenticated as required under Trial Rule 44(A)(1) because on the certification, Holmes' signature appeared as a stamp and DCM's initials were computer-generated. However, Coates has again failed to preserve this particular issue for appellate review. A party must object to an exhibit when it is offered and before it is admitted into evidence. *Hartman v. State* (1993), Ind.App., 615 N.E.2d 455, 459–60. The objection "must be full and comprehensive in pointing out the particular reason for the objection." *Matter of Estate of Palamara* (1987), Ind.App., 513 N.E.2d 1223, 1231; *See* Ind.Evidence Rule 103(a)(1).

■ Coates objected to admission of Exhibit 1 at the time it was initially offered on the grounds that (1) the included documents were hearsay and (2) the Certification of Notice Mailed should have been certified by the official who signed the two letters mailed to him, rather than by "DCM." The trial court admitted Exhibit 1 over Coates' objection. Some time later, after the redirect examination of Officer Thompson, Coates "expanded" his objection and asked the court

to reconsider admission of Exhibit 1 on the basis that the general certification by Holmes and DCM was improper. We agree with the State that Coates' contention that the certification was improper has been waived because he failed to make a timely objection on that ground prior to the trial court's admission of Exhibit 1.

■ Notwithstanding waiver, Coates' assertion has no merit. It is well-settled that the validity of a signature to a certification statement does not depend on it being executed "with pen and ink or any other specific instrument." *Johnson v. State* (1993), Ind., 622 N.E.2d 172, 174 (quoting *James v. State* (1985), Ind.App., 475 N.E.2d 1164, 1166). In *Johnson,* the supreme court considered the stamped signature of the Clerk of the Montgomery Circuit Court and held:

'[A] signing or subscribing may legally be done by another for the party to such an instrument, if done at his request, and . . . it may be done with pen and ink, pencil, stamp, stencil, typewriter or type. . . .'

*Id.* (citation omitted). Thus, in the present case, Holmes' signature stamp on page 1 of the exhibit was adequate.[1]

■ Likewise, the certification by DCM on Holmes' behalf, on the document entitled "Certification of Notice Mailed," was adequate. The letters "DCM" were handwritten in pen on that document. "When a person intends for the mark or name to represent his signature on a document, it meets the requirements of the law. Moreover, in certain instances, initials may constitute a legal signature." *Brewer v. State* (1993), Ind., 605 N.E.2d 181, 183. We hold that the BMV documents were properly authenticated under Trial Rule 44(A)(1). The trial court did not err.

## B. Hearsay

Finally, Coates asserts that the BMV documents admitted as Exhibit 1 constituted inadmissible hearsay under Evidence Rules 802 and 803(8)(c).[2] Again, we disagree.

At trial, the State offered Exhibit 1 pursuant to Evidence Rule 902(1), as an exception to Rule 802. Rule 902(1) provides that "Domestic Public Documents" are self-authenticating when properly certified by a government official "in the manner provided by Trial Rule 44(A)(1)." As the State asserts, and as we have already determined, the BMV documents were properly authenticated.

■ Contrary to the State's argument at trial, Rule 902(1) does not in itself provide an exception to the hearsay rule. While self-authentication of a document under Rule 902(1) relieves the proponent from submitting foundational testimony as to authenticity it does not, unlike Indiana law before adoption of the Rules of Evidence,[3] guarantee admissibility. *See* 13A R. MILLER, INDIANA PRACTICE § 902.100, at 71

---

1. Contrary to Coates' contention on appeal, it is of no moment that in *James* we cited a statute which has since then been repealed and that in *Johnson* our supreme court cited *James.* The holding in *James* did not rely on and was not limited to former Indiana Code § 9–4–13–7.

2. Indiana Rule of Evidence 803 provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness. . . .
(8) **Public Records and Reports.** Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations in any form, of a public office or agency, setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to au-

thority granted by law. *The following are not within this exception to the hearsay rule:* (a) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case; (b) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; *(c) factual findings offered by the government in criminal cases;* and (d) factual findings resulting from special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case.
(Emphases added). Viewing Coates' assertion on appeal in light of his objection at trial, we interpret his argument to mean that the BMV documents in Exhibit 1 were specifically excluded from the exception to the hearsay rule in 803(8) by the limitation in section (c) of that rule.

3. *See, e.g., Wright v. State* (1977), 266 Ind. 327, 340, 363 N.E.2d 1221, 1228.

(1995); G. WEISSENBERGER, *Indiana Evidence 1995 Courtroom Manual* § 902, at 240. Under the new rules, other issues such as hearsay must still be addressed when considering admissibility. *See* R. MILLER, at 72; G. WEISSENBERGER, at 240. In this regard, Coates is correct.

■ Nevertheless, on these facts, the trial court properly admitted Exhibit 1 over Coates' Rule 803(8)(c) objection. Before adoption of the Rules of Evidence, our courts consistently held that properly certified BMV records fell within the common law "official records exception" to the hearsay rule and, thus, were admissible. *See Cruite v. State* (1994), Ind., 641 N.E.2d 1264, 1265–66; *Collins v. State* (1991), Ind., 567 N.E.2d 798, 800; *Mogle v. State* (1984), Ind.App., 471 N.E.2d 1146, 1151; *Warner v. State* (1980), Ind.App., 406 N.E.2d 971, 973. Although according to one commentator, "Rule 803(8) is far more specific, and demands a far different analysis, than earlier Indiana law," we discern no reason why the BMV records in the present case should not be treated as public records admissible under Evidence Rule 803(8). 13 R. MILLER, INDIANA PRACTICE § 803.108, at 653 (1995); *see State v. Morin* (1991), Me., 598 A.2d 170, 172 (computer printout of driving record admissible under Maine Evidence Rule 803(8), which is substantially similar to Indiana rule).

The hearsay exception for public records "is based on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." 13 R. MILLER, at 652; *see Bradford Trust Co. v. Merrill Lynch, Pierce, Fenner and Smith, Inc.* (2d Cir.1986), 805 F.2d 49, 54. Consistent with that rationale, Rule 803(8) establishes a hearsay exception for three types of "records, reports, statements, or data compilations in any form, of a public office or agency...." The first part of the rule provides an exception for records which set forth an agency's "regularly conducted and regularly recorded activities," while the second part provides an exception for "matters observed pursuant to duty imposed by law and as to which there was a duty to report...." Ind.Evidence Rule 803(8).

Contrary to the "matters observed" provision of Rule 803(8), the exception for an agency's "regularly conducted and regularly recorded activities" does not *require* a statutory obligation to make the record. *See* 13 R. MILLER, at 655. Here, although the BMV is under a statutory duty to maintain records such as Coates' Official Driving Record and the Notice of Suspension mailed to him, we do not believe those records constitute "observations."[4] *See* IND.CODE § 9–14–3–7; *see also Collins*, 567 N.E.2d at 800. Rather, the BMV documents admitted as Exhibit 1 are a compilation of the BMV's "regularly conducted and regularly recorded activities" and, thus, fall within that hearsay exception in Rule 803(8). The judgment of the trial court is affirmed.

Affirmed.

ROBERTSON and HOFFMAN, JJ., concur.

---

4. *Contra Kindel v. State* (1995), Ind.App., 649 N.E.2d 117, 119 (determination of habitual violator in BMV record based exclusively upon "matters observed pursuant to a duty imposed by law" and, thus, admissible under that hearsay exception in Evidence Rule 803(8)).