**Willie DUMES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–9901–CR–15.**

Court of Appeals of Indiana.

Nov. 5, 1999.

Mark Small, Marion County Public Defender Agency, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Liisi Brien, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge

Willie Dumes was found guilty by a jury of operating a motor vehicle while privileges are forfeited for life, a Class C felony.[1] Dumes now appeals his conviction. We reverse and remand for a new trial.

### Issues

Dumes raises three issues for our review, which we expand and restate as five:

1. Whether the trial court properly admitted Dumes' driving record into evidence when it had been inadequately redacted by the State;

2. Whether the trial court properly admitted Dumes' driving record into evidence when it was certified by the State;

3. Whether the trial court properly admitted Dumes' driving record under the public records exception to the hearsay doctrine;

4. Whether there was sufficient evidence to support Dumes' operating a motor vehicle while privileges are forfeited for life conviction; and

5. Whether double jeopardy bars the State's retrial of Dumes for operating a motor vehicle while privileges are forfeited for life.

### Facts and Procedural History

The facts most favorable to the judgment reveal that on January 14, 1993, Dumes entered a plea of guilty to the charge of operating a motor vehicle while a habitual traffic offender. The trial court later suspended Dumes' driving license for life.

On May 28, 1998, a police officer ran a computer license plate check on a motor vehicle driven by Dumes. After discovering that the license plate was expired, the officer asked Dumes to provide his license and registration. After learning that Dumes' driving license was suspended for life, the officer arrested him. Thereafter, the State charged Dumes with operating a motor vehicle while privileges are forfeited for life.

A paralegal of the prosecutor's office later obtained Dumes' driving record via the Internet and certified it as she was authorized to do by the Indiana Bureau of Motor Vehicles ("BMV"). At trial, the State introduced Dumes' driving record into evidence over his objection. The trial court deemed the driving record self-authenticating, and admitted it into evidence without requiring the State to provide foundational testimony as to its authenticity. Because Dumes' driving record contained multiple suspensions and convictions unrelated to the charged crime, the State redacted the information from his driving record with a black marker before it was submitted to the jury.

A jury found Dumes guilty as charged. The trial court sentenced Dumes to eight years at the Indiana Department of Correction, all but three years suspended. This appeal ensued.

---

**1.** Ind.Code § 9–30–10–17.

*Discussion and Decision*

### I. Admission of Evidence

Dumes contends that the trial court erred in admitting his driving record into evidence. Specifically, he argues that the driving record was not properly authenticated because it was certified by the State, not the BMV. Moreover, Dumes argues that even if authentic, the State's attempt to redact the earlier convictions and suspensions appearing on his driving record was inadequate, and thus, prejudicial. Finally, Dumes argues that the driving record is inadmissible hearsay.

### A. Standard of Review

 Our standard of review in this area is well settled. The admissibility of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Spires v. State*, 670 N.E.2d 1313, 1315 (Ind.Ct.App.1996). In determining admissibility of evidence, the reviewing court will only consider the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor. *Reaves v. State*, 586 N.E.2d 847, 857 (Ind.1992).

### B. Redaction

Dumes contends that the trial court erred in admitting his driving record into evidence because of the inadequate redactions done by the State. Specifically, he argues that the State's attempt to redact from his driving record his multiple convictions and suspensions unrelated to the crime with which he was charged was unsuccessful, and thus, highly prejudicial. We agree.

### 1. Adequacy of Redaction

██ At trial, the State was required to prove beyond a reasonable doubt that Dumes' driving license has been suspended for life as of May 28, 1998, and that Dumes operated a motor vehicle on that date. In an effort to prove the lifetime suspension of Dumes' driving license, the State introduced into evidence the BMV driving record of Dumes. The State, utilizing a black dry marker, attempted to redact sixteen "suspensions reasons," three "convictions," and nine "suspension notices mailed" from a copy of Dumes' driving record before submitting it to the jury.[2] However, the State was unsuccessful in its attempt at redaction because a reasonable juror could see the text through the blacked out portions of the driving record.

Redaction is simply the editing or revising of a document. It is commonly used to make otherwise inadmissible exhibits admissible. For instance, redaction has been utilized by the State to alter a confession so as to excise any reference by one joint defendant to any codefendants. *See generally Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *Townsend v. State*, 533 N.E.2d 1215, 1224 (Ind.1989). However, redaction can also be utilized, as in this case, as a means of altering a driving record so that it can be admitted into evidence. After examining the redacted driving record, we conclude that the redactions were inadequate because the redacted portions of the record could be seen by a reasonable juror. Thus, we will view the driving record as being submitted to the jury in an *unedited* form.

After viewing Dumes' driving record, the jury learned that Dumes had multiple prior convictions and license suspensions

---

**2.** The "suspensions" listed on Dumes' driving record which we can read with little effort despite the State's "redaction," include: (1) chemical test failure (listed three times); (2) unsatisfied judgment for accident; (3) no insurance-accident, (4) chemical test refusal; (5) prior OWI within five years; (6) habitual traffic violator-ten year; (7) driving while suspended (listed three times); (8) failure to pay (listed three times); (9) failure to meet requirements; and (10) operating while a habitual traffic violator-misdemeanor. The "convictions" include: (1) operating while a habitual traffic violator-life/felony; (2) prior OWI within five years; and (3) operating while a habitual traffic violator-misdemeanor.

unrelated to the crime with which he was currently charged. The Indiana Supreme Court has stated that "[e]vidence of a prior conviction is as prejudicial as evidence can get, and [thus,] requires a strong showing of probative value." *Thompson v. State*, 690 N.E.2d 224, 235 (Ind.1997). Moreover, the court has stated that "one crime cannot be proved in order to establish another distinct crime even though they are the same kind. Such evidence is highly prejudicial." *Loveless v. State*, 240 Ind. 534, 166 N.E.2d 864, 866 (1960).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. Evid. R. 404(b). The Indiana Supreme Court has stated that the paradigm of evidence inadmissible under Rule 404(b) "is a crime committed on another day in another place, evidence whose only apparent purpose is to prove the defendant is a person who commits crimes." *Swanson v. State*, 666 N.E.2d 397, 398 (Ind. 1996). Evidence concerning crimes extrinsic to the one for which a defendant is on trial is generally inadmissible for three reasons. First, the government may not punish people for their character, and evidence of extrinsic offenses poses the danger that the jury will convict the defendant because his "general character is bad or . . . he has a tendency to commit certain crimes." *Williams v. State*, 489 N.E.2d 53, 55 (Ind.1986). Second, extrinsic offenses raise collateral issues that confuse the jury and divert attention away from the charged crime. *Gibbs v. State*, 538 N.E.2d 937, 939 (Ind.1989). Third, indiscriminate admission of extrinsic evidence offenses compels a defendant to meet accusations without notice. *Id.*

■ Our analysis of admissibility under Rule 404(b) necessarily incorporates the relevancy test of Rule 401 and the balancing test of Rule 403. *Sanders v. State*, 704 N.E.2d 119, 124 (Ind.1999). For evidence of other crimes, wrongs, or acts to be admissible, the court must determine that: (1) the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403. *Thompson*, 690 N.E.2d at 233.

■ Relevance is broadly defined as probative value, and the trial court has wide discretion in ruling on the relevance of proffered evidence. *Sanders*, 704 N.E.2d at 124. Evidence Rule 404(b) allows the admission into evidence of other crimes, wrongs, or acts for "other purposes"[3] than to prove character or conforming conduct. In the present case, the State failed to offer the extrinsic acts into evidence for "other purposes" than Dumes' propensity to commit the crime with which he is currently charged. Thus, we conclude that the trial court erred in admitting the driving record which included suspensions and convictions unrelated to the crime with which Dumes was on trial because they were not relevant.[4]

## 2. Error

■ Having determined that the evidence was erroneously admitted, we must

---

**3.** "Other purposes" as provided in Evidence Rule 404(b) include: (1) proof of motive; (2) intent; (3) preparation; (4) plan; (5) knowledge; (6) identity; and (7) absence of mistake or accident. However, the list of "other purposes" set forth in the second sentence of Rule 404(b) is illustrative, not exhaustive. *Hicks v. State*, 690 N.E.2d 215, 219 (Ind. 1997). Evidence Rule 404(b) is an inclusionary rule rather then an exclusionary one. *Hardin v. State*, 611 N.E.2d 123, 128 (Ind. 1993).

**4.** We end our inquiry of the admissibility of Dumes' multiple convictions and suspensions under Evidence Rule 404(b) because the State has failed to satisfy the first prong of *Thompson*, that the prior convictions and license suspensions are relevant. 690 N.E.2d at 233. Thus, we need not balance the probative value of the evidence against the prejudicial impact on the jury.

now examine whether it was harmless or reversible error.

This court recently held that the admission into evidence and recitation to the jury of fourteen prior convictions beyond the conviction upon which the defendant's lifetime driving license suspension was based was highly prejudicial and thus, reversible error. *Jones v. State*, 708 N.E.2d 37, 41 (Ind.Ct.App.1999). The majority in *Jones* reasoned that the error was reversible because the error was too prejudicial, and that the jury could have convicted the defendant on his character rather than the acts he committed in connection with the crime he was charged. *Jones*, 708 N.E.2d at 40. Moreover, the majority reasoned that the error was reversible because it added too heavily to the burden of the defense by negating the due process presumption of innocence accorded to the defendant. *Id.*

The only issue before the jury in *Jones* was whether the defendant's driving license was suspended for life as of the date of his arrest, a purely legal question.[5] In the present case, however, the jury was also confronted with the issue of whether Dumes was driving an automobile on the date of his arrest, a question of fact. Police officer Harmon testified at trial that he observed Dumes driving an automobile on the date of his arrest. R. 115. Dumes presented evidence at trial that he was not driving the automobile on the date. R. 171. Because of the conflicting testimony of the witnesses regarding the factual background of the arrest, Dumes' credibility was at issue. The evidence of Dumes' multiple convictions and license suspensions on his driving record unrelated to the crime with which he is currently charged may have resulted in the jury finding Dumes guilty based on his character, rather than the evidence presented at trial. Thus, we hold that it was reversible error to submit to the jury Dumes' driving record showing prior convictions and license suspensions unrelated to the crime with which he was charged because it was highly prejudicial.

### C. Authentication

Dumes contends that the trial court erred in admitting his driving record into evidence. Specifically, he argues that the driving record was not properly authenticated because it was certified by the State, not the BMV. Although we need not decide this issue based upon our resolution of the previous issue, we address it because it may arise on retrial.

#### 1. Authentication of Driving Record by State

■ In order for an item of evidence to be admissible, the proponent must show that it is authentic. Evid. R. 901(a);[6] *Getha v. State*, 524 N.E.2d 325, 328 (Ind.Ct.App.1988). Evidence that establishes a reasonable probability that the document is what it is claimed to be constitutes sufficient authentication or identification. *Lahr v. State*, 640 N.E.2d 756, 761 (Ind.Ct.App.1994), *trans. denied.* Once this reasonable probability is shown, any inconclusiveness of the exhibit's connection with the events at issue affects only the exhibit's evidential weight. *Malone v. State*, 700 N.E.2d 780, 782 (Ind.1998).

■ A public record or report may be authenticated by showing that it is from the public office where items of that nature are kept. Evid. R. 901(b)(7). A public record or report is either: (1) a writing authorized by law to be recorded or filed

---

5. We note that we agree with the dissent in *Jones* that when the only issue before the jury is whether the defendant's license is suspended for life as of the date of his arrest, the introduction of the defendant's prior offenses at trial is harmless error. We believe that this question is a legal one, and thus there is no danger that the jury will convict the defendant on his character rather than for the acts he committed in connection with the charges for which he is being tried.

6. Indiana Evidence Rule 901(a) provides "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

and in fact filed in a public office; or (2) a purported public record, report, statement, or data compilation in any form. *Id.* Driving records are public records. *See Fennell v. State,* 698 N.E.2d 823, 824 (Ind. App.1998); *see also* Ind.Code § 9–14–3–7.[7] The testimony of a witness, who need not be the actual record keeper, may establish that the document is from the office where such items are found. *Hardin v. State,* 265 Ind. 179, 353 N.E.2d 462, 463 (1976).

A public record that is authenticated under Evidence Rule 901(b)(7) but not certified by the custodian of the record must be "original" within the meaning of the "original writing rule." *See* Evid. R. 1002, 1003. However, Evidence Rule 1005[8] provides an exception to the "original writing rule" for public records certified by the custodian of the records. This exception is based on the recognition that the operation of public offices would be seriously disrupted and inconvenienced if the production in court of the original public record was repeatedly required. *Enlow v. State,* 261 Ind. 348, 303 N.E.2d 658, 661 (1973).

Witness testimony is not always required to establish the authenticity of a document. *Mott v. State,* 547 N.E.2d 261, 265 (Ind.1989). We have held that self-authenticating documents relieve the proponent from the requirements of submitting foundational evidence. *Coates v. State,* 650 N.E.2d 58, 62 (Ind.Ct.App.1995), *trans. denied.* Evidence may be authenticated by any method provided by Indiana statute or rule. *See* Evid. R. 901(b)(10). There are several methods by which a document may be self-authenticated in Indiana, including those relevant here: (1) Trial Rule 44(A)(1); (2) Evidence Rule

902; or (3) Indiana Code section 34–37–1–8.

 With regard to the Indiana Trial Rules, our supreme court has stated that where the document at issue is a domestic public record, and is certified in accordance with Trial Rule 44(A)(1),[9] the document is self-authenticating and no extrinsic evidence is necessary for its admission. *Bartlett v. State,* 711 N.E.2d 497, 502 (Ind.1999). Admissibility under Trial Rule 44(A)(1) is "based on the inherent trustworthiness of official records." *Mickens v. State,* 439 N.E.2d 591, 594 (Ind. 1982). We have held that authentication for the admission of an official record under Trial Rule 44(A)(1) requires an officer having custody of the record to attest, by testimony or certification, that it is the official original record, or a true and accurate copy thereof. *Liberty Nat'l Bank & Trust Co. v. Payton,* 602 N.E.2d 530, 533 (Ind.Ct.App.1992). The certifying officer's initials are sufficient attestation. *Brewer v. State,* 605 N.E.2d 181, 183 (Ind.1993). Moreover, certification under seal is required only when proof of the record's possession is at issue. *Richards v. State,* 535 N.E.2d 549, 550 (Ind.1989). In addition, Trial Rule 44(A)(1) does not require extrinsic proof or judicial certification that the certifying public official is the record's custodian. *Harwood v. State,* 555 N.E.2d 513, 516 (Ind.Ct.App.1990).

Indiana Evidence Rule 902 provides another method by which a document may authenticate itself and, if not otherwise objectionable, be admissible into evidence without any identifying testimony. *Mott,* 547 N.E.2d at 265. Evidence Rule 902 provides in pertinent part:

**7.** Indiana Code section 9–14–3–7(a) provides in pertinent part that "the bureau shall maintain an operating record for each person licensed by the bureau to drive a motor vehicle."

**8.** Evidence Rule 1005 provides that "[t]he contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admis-

sible, may be proved by a copy, certified as correct in accordance with Rule 902...."

**9.** Trial Rule 44(A)(1) provides that "an official record kept within the United States, or any state ... thereof, ... when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy."

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

\* \* \* \* \* \*

■ (9) Certified domestic records of regularly conducted activity. Unless the source of information or the circumstances of preparation indicate a lack of trustworthiness, the original or a duplicate of a domestic record of regularly conducted activity within the scope of Rule 803(6), which the custodian thereof or another qualified person certifies under oath (i) was made at or near the time of the occurrence of the matters set forth, by or from information transmitted by, a person with knowledge of those matters, (ii) is kept in the course of a regularly conducted activity, and (iii) was made by the regularly conducted activity as a regular practice.

Self-authentication under Evidence Rule 902 does not make an exhibit automatically admissible. *Coates,* 650 N.E.2d at 62–63.

■ Moreover, under Indiana Code section 34–37–1–8,[10] copies of public records are authenticated, and thereby admissible, when they are attested as true and complete by the custodian of the records under the seal of his office or, if the officer has no seal, when his attestation is accompanied by a certificate from the clerk of the county where the custodian resides that such attestation is made by the proper officer. The person who certifies the record must have been the record keeper at the time of the certification, although not necessarily at the time the record is offered into evidence. *Kimp v. State,* 546 N.E.2d 1193, 1197 (Ind.1989).

■ Regardless of the self-authentication method used by a party, the documents must be attested as true and complete by the custodian of the records. Therefore, our initial inquiry is to determine who is the custodian of driving records.

The BMV is statutorily required to maintain an operating record for each person that has been licensed by the BMV to drive a motor vehicle. Ind.Code § 9–14–3–7(a). Moreover, the BMV is required to produce certified driving records upon a proper request and payment of a fee. Ind. Code § 9–14–3–7(d). Thus, the BMV is both the custodian of driving records and the entity statutorily empowered and responsible for certifying these public records.

We have held that a certified copy of one's driving record, attested as a public record by the Commissioner of the BMV is admissible into evidence without foundational evidence. *Weaver v. State,* 404 N.E.2d 1180, 1182 (Ind.Ct.App.1980). Ideally, the Commissioner himself would certify all driving records, especially those that are utilized in court proceedings. However, this is not feasible, and thus, individuals employed by the BMV acting on the Commissioner's behalf may certify driving records. This delegation of authority to BMV employees does not necessarily extend to those unaffiliated with the BMV.

Because certification of public records by the custodian of records is sufficient evidence that the records are what the sponsor purports them to be, there is no need for foundational testimony or the introduction of the "original" document. However, the certification of public records must be made by the *custodian of the records.* In regards to driving records, the certification must come from the BMV, not an entity or individual not affiliated with that agency.

At trial, the State introduced into evidence Dumes' driving record. The BMV records were obtained via the Internet and certified by a paralegal employed by the

---

10. Indiana Code section 34–37–1–8 provides that "exemplifications or copies of records ... that are kept in any public office in Indiana shall be proved or admitted as legal evidence in any court or office in Indiana: (1) by the attestation of the custodian of the records ... that the copies are true and complete copies of the records...."

prosecutor's office. R. 85. The State informed the trial court that paralegals in the prosecutor's office had been given authority by the BMV to certify driving records. R. 86. The trial court admitted the driving record into evidence over Dumes' objection that the record was not properly authenticated. R. 127. The Indiana Supreme Court has stated that public records cannot be placed in evidence merely upon a party's offering a copy and claiming it to be accurate copy of the original. *Mott,* 547 N.E.2d at 264. This is especially true when a party to a court proceeding is certifying and authenticating documents it intends to introduce into evidence.

We realize that it is convenient for the prosecutor's office to obtain driving records via the Internet and certify the records internally, effectively bypassing the administrative process of the BMV. The prosecutor's office not only saves time, but also resources which would otherwise be spent in obtaining certified records from the BMV. However, convenience does not defeat the purposes served by the self-authentication requirements imposed by the Trial Rules, the Rules of Evidence, or Indiana statute. Thus, the trial court

erred in admitting Dumes' driving records into evidence based solely on the prosecutor's certification because the prosecutor's office was not the appropriate entity to certify driving records as true and complete.[11]

### D. Hearsay

██ Dumes also contends that his driving record is inadmissible hearsay. Specifically, he argues that his driving record does not fit within the public records and reports exception to the hearsay doctrine. We disagree.[12]

██ BMV documents constitute hearsay if introduced into evidence to prove the truth of the matter asserted.[13] Hearsay is a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. Evid. R. 801(b). Hearsay is inadmissible unless admitted pursuant to a recognized exception. Evid. R. 802. However, this court has held that documents certified by the BMV are admissible under Evidence Rule 803(8)[14] as a compilation of the BMV's "regularly conducted and regularly recorded activities." *Coates,* 650 N.E.2d at 63. The hearsay exception for public

11. Were this the only error alleged by Dumes, we would hold it to be harmless based on the independent evidence that Dumes' driving licenses was suspended. However, this is not an open invitation for the prosecutor's office to continue its practice of having paralegals obtain driving records via the Internet and certify them as true and complete. We caution the prosecutor's office to adhere to our holding in this case, and have the custodian of driving records, the BMV, certify such documents for trial.

12. Again, although this is not a dispositive issue of this appeal, we will address Dumes' hearsay argument because of the likelihood that this issue will arise on retrial.

13. We note that an authentication inquiry is a precursor to any hearsay analysis. *King v. State,* 560 N.E.2d 491, 495 (Ind.1990). Because we would have held the improper certification of Dumes' driving record to be harmless error if it had been the only error, we will assume for purposes of this discussion that Dumes' driving record was properly certified by the BMV, and thus, self-authenticated.

14. Indiana Evidence Rule 803(8) provides an exception to the hearsay rule:

Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations in any form, of a public office or agency, setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as such to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: (a) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case; (b) investigative reports prepared by or for a government, a public, office, or an agency when offered by it in a case in which it is a party; (c) factual findings offered by the government in criminal cases; and (d) factual findings resulting from special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case.

records "is based on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." *Id.; Bradford Trust Co. v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.,* 805 F.2d 49, 54 (2d Cir.1986). Because Dumes' driving record fits within public records exception of Evidence Rule 803(8), it is not inadmissible hearsay.[15]

## II. Sufficiency of the Evidence

Dumes contends that there is insufficient evidence to support his conviction for operating a motor vehicle while privileges were forfeited for life. Specifically, he argues that the evidence is insufficient because the State failed to prove that his license was validly suspended. In addition, Dumes argues that the evidence is insufficient because a defense witness testified at trial that Dumes was not driving the car the day he was arrested. Because we have decided that the admission of Dumes' inadequately redacted driving record into evidence inappropriately reflected on Dumes' character, we cannot assess the impact of this improperly admitted evidence on the jury's determination of credibility, and thus, we do not address this issue.

## III. Double Jeopardy

Although not specifically raised by Dumes on appeal, we will address whether principles of double jeopardy bar the State's retrial of Dumes because reversal in this case is due to trial error in the admission of evidence.

### A. Standard of Review

■ Principles of double jeopardy generally do not bar a retrial on the same crime when reversal is required due to trial error in the admission of evidence. *See Thompson,* 690 N.E.2d at 237. However, double jeopardy forbids a retrial if the reviewing court concludes that the evidence is legally insufficient to support the conviction. *Id.*

### B. Double Jeopardy does not Bar the Retrial of Dumes

■ The Double Jeopardy Clause provides that no person will "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This prohibition applies to the states via the Fourteenth Amendment. *Mason v. State,* 689 N.E.2d 1233, 1238 (Ind.1997). The clause protects people from, among other things, a second prosecution for the same offense after conviction. *Id.* However, this prohibition does not bar the retrial when a conviction is reversed for trial court error in the admission of evidence because the improper admission of evidence implies nothing about a defendant's guilt or innocence. *Warner v. State,* 579 N.E.2d 1307, 1311 (Ind.1991). Here, we reverse Dumes' conviction for the improper admission into evidence of his driving record. Because we have determined that there is sufficient evidence for a reasonable jury to find Dumes guilty of operating a motor vehicle while privileges are forfeited for life, double jeopardy does not preclude a retrial.

### *Conclusion*

Based on the foregoing, we hold that the trial court abused its discretion in admitting into evidence an inadequately redacted copy of Dumes' driving record which allowed the jury to see multiple convictions and license suspensions unrelated and ir-

---

**15.** We note that Dumes applies the three part test developed by the Indiana Supreme Court in *Ealy v. State,* 685 N.E.2d 1047, 1054 (Ind. 1997) for determining whether a piece of evidence is inadmissible under subsection (c) of Rule 803(8). Application of the *Ealy* test was subsequently expanded to subsection (a), (b), and (d) of Evidence Rule 803(8). *Shepherd v. State,* 690 N.E.2d 318, 326 (Ind.Ct.App.1997). However, Dumes has not articulated under which subsection driving records are excluded from the 803(8) exception to the hearsay rule. It appears he is arguing that driving records contain factual findings, but we have already concluded that driving records fit within the public records exception to the hearsay rule in *Coates,* 650 N.E.2d at 63. Because subsections (a)-(d) of Evidence Rule 803(8) were not raised, we need not apply the three part *Ealy* test.

relevant to the charged crime. Therefore, we reverse and remand for a new trial.

Reversed and Remanded.

FRIEDLANDER, J., and RILEY, J., concur.