


FILED
Jun 24 2025, 8:59 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Ryan Scott Fisher,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 24, 2025

Court of Appeals Case No.
24A-CR-2402

Appeal from the
Sullivan Superior Court

The Honorable
Hugh R. Hunt, Judge

Trial Court Cause No.
77D01-2309-F4-436

**Opinion by Senior Judge Crone**
Judges May and Bradford concur.

**Crone, Senior Judge.**

## Statement of the Case

Ryan Scott Fisher appeals from his convictions of Level 4 felony unlawful possession of a firearm by a serious violent felon (SVF), and Level 5 felony possession of methamphetamine. Concluding that Fisher has not established error, we affirm.

## Issues

Fisher presents the following issues for our review, which we reorder and restate as follows:

> I. Whether Fisher's convictions for possession of a firearm by a SVF and for possession of methamphetamine, elevated by his possession of a firearm, violate double jeopardy principles.
> II. Whether the trial court's admission of a law enforcement officer's present sense impressions was an abuse of discretion because the evidence was allegedly inadmissible under Evidence Rule 404(b).
> III. Whether the trial court abused its discretion by admitting a redacted version of Fisher's Department of Correction (DOC) packet, which omitted evidence of Fisher's criminal history beyond that necessary to establish his SVF status.
> IV. Whether the trial court abused its discretion when sentencing Fisher by giving his proffered mitigating factors minimal weight and by allegedly failing to find mitigating factors,

as balanced against his criminal history and failure to reform his behavior.

## Facts and Procedural History

On May 30, 2023, Fisher drove a vehicle at seventy-six miles per hour in a zone with a posted speed limit of sixty miles per hour when he passed Indiana State Trooper Justin Bell traveling the opposite direction on U.S. 41 in Sullivan County. Trooper Bell pursued Fisher's vehicle, at times reaching speeds of one hundred miles per hour to stop the driver. Bell observed Fisher's car make frequent lane changes. And when Fisher approached the intersection of U.S. 41 and State Road 48, he maneuvered his car from the left lane across two lanes of traffic to the shoulder. Fisher's vehicle drove in the gravel and dirt to pass another vehicle that was waiting to turn at the red light. The officer activated his patrol car's lights to initiate a traffic stop.

When the car stopped, Trooper Bell observed two men and one woman in the vehicle. Based on the erratic driving at high speed, the officer treated the stop as a high-risk encounter. He ordered the driver and passengers to exit the car. Fisher, the driver, and the male back-seat passenger, walked to Trooper Bell, who placed them in handcuffs. Another officer who arrived at the scene secured the female, who had occupied the front passenger seat.

Fisher and the woman informed Bell that their identification was in the vehicle. When he approached the vehicle, Trooper Bell smelled the odor of raw and burnt marijuana. Based on the marijuana smell, Trooper Bell and Sergeant

Kristopher Fitzgerald searched the car. They found a loaded firearm with a holster in the front passenger seat wedged between the seat and the center console, a black tube with a baggie of methamphetamine in the center console, a glass smoking pipe under the driver's seat, and another firearm under the front passenger seat.

[6] Fisher admitted to Bell that he knew the guns and methamphetamine were in the car, but he claimed they belonged to the woman who had occupied the front passenger seat. None of the occupants of the car claimed ownership of the guns. And the car belonged to a woman from Elkhart who was not in the vehicle when it was stopped. Fisher told the officers that he had borrowed the car from her and that he had been repairing the vehicle for the past few weeks.

[7] The State charged Fisher with unlawful possession of a firearm by a SVF, possession of methamphetamine, and possession of paraphernalia. During the first phase of the trial, the jury found Fisher guilty of possession of methamphetamine and possession of a firearm, but acquitted him of possession of paraphernalia. During the second phase, the jury found Fisher guilty of possession of a firearm by a SVF. The trial court sentenced Fisher to consecutive terms of twelve years for unlawful possession of a firearm by a SVF and five years for possession of methamphetamine. Fisher now appeals.

# Discussion and Decision

## I.    Double Jeopardy Claim

[8]    Fisher was convicted of possession of a firearm by a SVF and possession of methamphetamine elevated by his possession of a firearm. His argument on appeal is based on the premise that he "was twice convicted for possessing the same firearm on the same occasion[.]" Appellant's Br. p. 6. There is no dispute that his double jeopardy argument is governed by our Supreme Court's decision in *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020), as opposed to *Powell v. State*, 151 N.E.3d 256 (Ind. 2020) (single criminal act or transaction violates single statute but harms multiple victims).

[9]    The three-step *Wadle* analysis for such claims was adjusted in *A.W. v. State*, 229 N.E.3d 1060 (Ind. 2024) as to the second step of the analysis. Thus, we also look to *A.W.* for guidance.

[10]    The first step in the *Wadle* analysis begins with the statutory language of the offenses. "If the language of either statute clearly permits multiple punishment, either expressly or by unmistakable implication, the court's inquiry comes to an end and there is no violation of substantive double jeopardy." *Wadle*, 151 N.E.3d at 248. The State concedes that our analysis does not end at this step, and we agree. Appellee's Br. pp. 14-15.

[11]    Under the second step, "'a court must then apply our included-offense statutes to determine statutory intent.'" *A.W.*, 229 N.E.3d at 1066 (quoting *Wadle*, 151 N.E.3d at 248).

An 'included offense,' as defined by the General Assembly, is an offense

(1) that "is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged,"
(2) that "consists of an attempt to commit the offense charged or an offense otherwise included therein," or
(3) that "differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

*A.W.*, 229 N.E.3d at 1066 (quoting Ind. Code § 35-31.5-2-168 (2012)). "'If neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy' and the analysis ends—full stop." *A.W.*, 229 N.E.3d at 1067 (quoting *Wadle*, 151 N.E.3d at 248). "But if one offense is included in the other, the court must proceed to Step 3." *A.W.*, 229 N.E.3d at 1067.

[12] The Supreme Court clarified that "when assessing whether an offense is factually included, a court may examine only the facts as presented on the face of the charging instrument." *Id.* Noting that "[d]ouble jeopardy outcomes should not turn solely on the facts the prosecutor elects to include or exclude in the charging instrument[,] Step 2 as currently understood confers an asymmetrical benefit to the State." *Id.* at 1069. *A.W.* removed that asymmetrical benefit by holding that "where ambiguities exist in a charging instrument about whether one offense is factually included in another, courts

must construe those ambiguities in the defendant's favor and thus find a presumptive double jeopardy violation at Step 2[, which] the State can later rebut . . . at Step 3." *Id.*

[13] Thus, we engage in the adjusted Step 2 analysis here. A conviction for unlawful possession of a firearm by a SVF does not require evidence of possession of methamphetamine and possession of methamphetamine does not require SVF status. Additionally, one offense is not an attempt to commit the other offense. And the offenses differ in ways that involve more than the level of culpability. The offenses are not inherently included.

[14] Next, we determine whether the offenses are factually included, "examin[ing] only the facts as presented on the face of the charging instrument." *Id.* at 1067 (emphasis omitted). An offense is factually included "when 'the charging information alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense.'" *Woodcock v. State*, 163 N.E.3d 863, 874 (Ind. Ct. App. 2021) (quoting *Wadle*, 151 N.E.3d at 251 n.30), *trans. denied.*

[15] As charged, the State alleged that Fisher committed Level 4 felony unlawful possession of a firearm by a serious violent felon by possessing "a Smith and Wesson bodyguard .380 Serial # EBT4090 and/or a Springfield Armory XDM .40 caliber handgun serial #MG142581" "having previously been convicted of a serious violent felony, to-wit: Attempted Armed Robbery, a Class B Felony, in Elkhart Circuit Court in cause number 20C01-0601-FB-00003." Appellant's

App. Vol. II, p. 22. And as charged, the State alleged that Fisher "without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, [did] knowingly or intentionally possess methamphetamine, pure or adulterated, the said methamphetamine weighing less than 5 grams while . . . in possession of a firearm[,]" committed Level 5 felony possession of methamphetamine, elevated by his possession of a firearm. *Id.* at 20.

[16] Again, unlawful possession of a firearm by a SVF as charged does not include the element of possessing methamphetamine. And possession of methamphetamine as charged does not allege that Fisher had been previously convicted of a serious violent felony. Because Fisher's methamphetamine charge was enhanced from a Level 6 to a Level 5 felony based on his firearm possession, this case involves an enhancement relationship rather than dual convictions for the same conduct. Under *Wadle*, such enhancements do not implicate double jeopardy.

[17] Thus, Fisher's possession of a handgun as the basis for his conviction of unlawful possession of a firearm by a SVF and the possession of a handgun used to elevate his conviction of possession of methamphetamine do not implicate double jeopardy. "[A]n enhanced punishment, whether based on attendant circumstances or on a prior conviction, presents no 'double jeopardy issue at all.'" *Wadle*, 151 N.E.3d at 254 (quoting *Workman v. State*, 716 N.E.2d 445, 448 (Ind. 1999)). "Because the elevation is 'not a separate offense or conviction,' double-jeopardy analysis is simply inapposite." *Id.*

[18]   We conclude there is no need to proceed to Step 3 because there is no double jeopardy violation.

## II.   Evidence Rule 404(b) or Present Sense Impressions

[19]   Fisher claims that the trial court abused its discretion by allowing the admission of improper Evidence Rule 404(b) evidence. We generally review a trial court's decision regarding the admission of evidence for an abuse of discretion. *Weed v. State*, 192 N.E.3d 247, 249 (Ind. Ct. App. 2022). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." *Id.*

[20]   Indiana Rule of Evidence 404(b)(1) provides: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Ind. Evid. R. 404(b)(2). "The purpose of the rule is to prevent the jury from making the 'forbidden inference' that a defendant is guilty of the charged offense on the basis of other misconduct." *Kendall v. State*, 225 N.E.3d 794, 798 (Ind. Ct. App. 2023). Therefore, before admitting evidence under Rule 404(b), the trial court must: "(1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect

pursuant to Evidence Rule 403." *Mise v. State*, 142 N.E.3d 1079, 1086 (Ind. Ct. App. 2020), *trans. denied*.

[21] This issue involves the admission of a part of Sergeant Fitzgerald's testimony. During the traffic stop, officers asked the driver and passengers for their identification information. Fisher and the female passenger indicated that their identification was in the vehicle. As Trooper Bell and Sergeant Fitzgerald proceeded to the car, they smelled the odor of raw and burnt marijuana. Based on the marijuana smell, the officers searched the car. The officers found a loaded firearm with a holster in the front passenger seat wedged between the seat and center console, a black tube with a baggie of methamphetamine in the center console, a glass smoking pipe under the driver's seat, and another firearm under the front passenger seat.

[22] At trial, Sergeant Fitzgerald testified that during the search, he also located a BB gun that "at first glance" he believed to be an actual firearm, and a bag on the front passenger seat that had numerous "car chargers, GPSs, GPS mounts, and a "voltmeter," which he "initially . . . kind of believed might be indications of auto thefts or burglaries of vehicles." Tr. Vol. 2, p. 109. Fisher objected, but the trial court overruled the objection, stating, "he's testifying [about] what he saw there." *Id.*

[23] Fisher argues that the testimony prejudiced him because the implication was that he "might have committed auto theft or burglary" and was not provided notice that the State intended to introduce evidence of other bad acts.

Appellant's Br. p. 13. The State contends that Fitzgerald "was merely listing the items he found while searching the vehicle and providing his observations about what he found." Appellee's Br. p. 24.

[24] Although the State did not articulate the argument as such, we agree that the officer's statements were admissible as a present sense impression. "A present sense impression is a 'statement describing or explaining an event, condition or transaction, made while or immediately after the declarant perceived it.'" *Stott v. State*, 174 N.E.3d 236, 243 (Ind. Ct. App. 2021) (quoting Evid. R. 803(1)). Here, the declarant was available at trial, thus there is no hearsay issue. And Sergeant Fitzgerald's testimony described his impressions at the time of the search of the items he found during the search. His testimony merely described his initial analysis of the items he found. And this testimony is not impermissible under Evidence Rule 404(b) because it is not evidence of crimes, wrongs, or other acts. We find no error here.

## III. Admission of Redacted DOC Packet-State's Exhibit 22

[25] Next, Fisher challenges the admission of State's Exhibit 22, the DOC packet used to establish his SVF status. We generally review a trial court's decision regarding the admission of evidence for an abuse of discretion. *Weed*, 192 N.E.3d at 249. "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." *Id.*

[26] State's Exhibit 22 was redacted to remove evidence of Fisher's criminal history beyond that required to establish his SVF status. The cover page of the exhibit

is a notarized Certification of Records from the designated keeper of the records for the Central Office of the Indiana Department of Correction on a State Form. Ex. Vol. 3, p. 29. The cover page indicates that the exhibit, inclusive of the certification page, is twenty-five pages long. The redacted exhibit introduced at trial consisted of seven pages including the certification page.

[27] Fisher's objection at trial was that the exhibit "does not contain proper authentication. It doesn't have a seal of the Court." Tr. Vol. 2, p. 204. The State replied that the document was self-authenticating under Evidence Rule 902(1). And the court overruled the objection.

[28] Evidence Rule 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." And Evidence Rule 902(1) provides that "[a] document that bears: (A) a seal purporting to be that of the United States; any state, district, commonwealth, territory, or insular area of the United States; a political subdivision of any of these entities or a department, agency, or officer of any entity named above; and (B) a signature purporting to be an execution or attestation" is self-authenticating.

[29] Here, State's Exhibit 22 properly reflected that it contained Fisher's criminal record as kept by the keeper of the records of the DOC. And the document is self-authenticating because it bears the seal of the State of Indiana, is attested to

by the keeper of records, and was notarized. Consequently, the exhibit was properly admitted.

[30] After Trooper Bell had testified about the contents of State's Exhibit 22, Fisher objected that the records were not properly certified (meaning there was no seal of the trial court) and that the photo in the packet should not have been included. That objection was overruled. However, those challenges to the exhibit go to the weight of the evidence. *Parker v. State*, 151 N.E.3d 1269, 1272 (Ind. Ct. App. 2020) ("any inconclusiveness regarding the exhibit's connection with the events at issue goes to the exhibit's weight, not its admissibility.").

[31] And for the first time on appeal, Fisher argues that the exhibit was incomplete and contained inadmissible hearsay. Appellant's Br. p. 29. "[A] party may not present an argument or issue on appeal unless the party raised that argument or issue before the trial court." *Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004).

[32] Nevertheless, Fisher's DOC packet was redacted on his behalf "to only show evidence of the armed robbery conviction," i.e., the evidence establishing his SVF status. Tr. Vol. 2, p. 209. Redaction is simply the editing or revising of a document and is commonly used to make otherwise inadmissible exhibits admissible. *Dumes v. State*, 718 N.E.2d 1171, 1174 (Ind. Ct. App. 1999). Contrary to his argument, redaction of Fisher's records did not cast doubt that State's Exhibit 22 was someone else's record. The redaction was done to reduce prejudice to him. "[E]vidence of a prior conviction is as prejudicial as

evidence can get, and requires a strong showing of probative value." *Thompson v. State*, 690 N.E.2d 224, 235 (Ind. 1997). The only prior conviction with strong probative value was the robbery conviction. And that is the only conviction in Fisher's DOC packet which was placed before the jury.

[33] Fisher further argues that State's Exhibit 22 is unreliable. He points to his testimony about the document's reliability in support of that argument. Appellant's Br. p. 29. This argument also pertains to the weight to be given to the evidence and not its admissibility. *Parker*, 151 N.E.3d at 1272. It also asks us to reweigh the evidence, a task our standard of review forbids us from undertaking. *Hirshey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied*. We decline that invitation and conclude for all of the reasons stated that the trial court did not abuse its discretion by admitting State's Exhibit 22.

## IV. Use of Sentencing Discretion

[34] Fisher received an aggregate sentence of seventeen years out of the maximum eighteen-year sentencing exposure he faced. *See* Appellant's App. Vol. II, pp. 164-65 (sentencing order); 166 (abstract of judgment); Ind. Code §§ 35-50-2-5.5 (Level 4 felony maximum sentence twelve years) (2014) , 35-50-2-6(b) (Level 5 felony maximum sentence six years) (2014). He argues that the trial court abused its discretion when sentencing him by finding that his proffered mitigators were entitled to minimal weight, and by failing to find significant statutory mitigating factors.

[35] "[S]entencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotation omitted). "We review for an abuse of discretion the court's finding of aggravators and mitigators to justify a sentence, but we cannot review the relative weight assigned to those factors." *Baumholser v. State*, 62 N.E.3d 411, 416 (Ind. Ct. App. 2016), *trans. denied.* "When reviewing the aggravating and mitigating circumstances identified by the trial court in its sentencing statement, we will remand only 'if the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record, and advanced for consideration, or the reasons given are improper as a matter of law.'" *Id.* (quoting *Anglemyer*, 868 N.E.2d at 490-91).

[36] At sentencing, Fisher offered the following mitigating circumstances: (1) there were "no victims harmed in this case. . . . no actual victims"; (2) he had strong family support; (3) he was employed; and (4) he had prior military experience. Tr. Vol. 2, p. 230. The trial court observed that Fisher had offered the mitigators, but found that they were not entitled to much weight. The trial court concluded, "So it's really the criminal history here, and what appears to be no desire to change your ways." *Id.* at 233.

[37] We observe that a trial court is not required to accept a defendant's view of what constitutes a mitigating factor or assign proposed mitigators the same weight as the defendant suggests. *Mehringer v. State*, 152 N.E.3d 667, 673 (Ind. Ct. App. 2020), *trans. denied*. And we cannot review "the relative weight assigned to those factors." *Baumholser*, 62 N.E.3d at 416. Furthermore, the trial court did not err by failing to consider the statutory mitigating factor that there was no victim. Instead, the trial court assigned that mitigator less weight than the defendant suggested.

[38] Fisher suggests for the first time on appeal that the trial court erred by failing to consider the statutory mitigating factor that a "person has posttraumatic stress disorder, traumatic brain injury, or a postconcussive brain injury." Appellant's Br. p. 24 (quoting Ind. Code § 35-38-1-7.1(b)(13)). "Generally, 'if the defendant fails to advance a mitigating circumstance at sentencing, the court will presume that the factor is not significant, and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal.'" *Creekmore v. State*, 853 N.E.2d 523, 530 (Ind. Ct. App. 2006) (quoting *Wells v. State*, 836 N.E.2d 475, 479 (Ind. Ct. App. 2005), *trans. denied*).

[39] Nevertheless, there is no evidence in the record to suggest that Fisher suffered a brain injury or from post-traumatic stress disorder. To explain why he claimed he could not remember that he had committed attempted robbery or his incarceration for that crime, Fisher said he had memory issues because he had been shot in the chest and this affected his spine. But there is no evidence that Fisher suffered a traumatic or post-concussive brain injury. "A trial court does

not err in failing to find mitigation when a mitigation claim is 'highly disputable in nature, weight or significance.'" *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007) (quoting *Smith v. State*, 670 N.E.2d 7, 8 (Ind. 1996)), *trans. denied*.

[40]     And there is no evidence that Fisher suffered from post-traumatic stress disorder, or, if he did, how that condition contributed to his commission of the crimes in the present case. When a defendant suffers from a mental illness, various factors bear on the weight, if any, that should be given to the mental illness at sentencing, including: "(1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of the nexus between the disorder or impairment and the commission of the crime." *Lewis v. State*, 116 N.E.3d 1144, 1155 (Ind. Ct. App. 2018) (quoting *Weeks v. State*, 697 N.E.2d 28, 30 (Ind. 1998)), *trans. denied*. For Fisher's proffered mitigator—post-traumatic stress disorder—"'to provide a basis for establishing a mitigating factor there must be a nexus between the defendant's mental health and the crime in question.'" *Steinberg v. State*, 941 N.E.2d 515, 534 (Ind. Ct. App. 2011) (quoting *Corralez v. State*, 815 N.E.2d 1023, 1026 (Ind. Ct. App. 2004)), *trans. denied*. Fisher has not made the requisite showing. And thus, the trial court did not abuse its discretion.

[41]     Here, the trial court found unchallenged, valid aggravating factors that justify his sentence. The trial court noted that Fisher's criminal history was "the big elephant in the room." Tr. Vol. 2, p. 232. Fisher had seven prior felony

convictions, many of which had occurred in the previous six years, and four prior misdemeanor convictions. The court found that this record showed Fisher had "no desire to change [his] ways." *Id.* at 233. Further, Fisher had multiple violations of probation and community corrections that show failed efforts to reform and rehabilitate him despite his contacts with the justice system.

[42] We conclude the trial court did not abuse its discretion during sentencing.

## Conclusion

[43] To summarize, there is no double jeopardy violation, the court did not err by admitting Sergeant Fitzgerald's present sense impressions, State's Exhibit 22 was a properly-admitted, self-authenticating document, and the trial court did not abuse its discretion when sentencing Fisher. Therefore, we affirm the trial court's judgment.

[44] Affirmed.

May, J., and Bradford, J., concur.

ATTORNEY FOR APPELLANT

Faith E. Alvarez
Alvarez Legal, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Kathy J. Bradley
Deputy Attorney General
Indianapolis, Indiana