**Troy S. FARRIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 30A04–0402–CR–69.**

Court of Appeals of Indiana.

Nov. 22, 2004.

Transfer Denied Jan. 27, 2005.

**64**

Nicole A. Zelin, Greenfield, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Daniel Jason Kopp, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Troy S. Farris was found guilty of robbery, a Class C felony, following a jury trial. Farris now appeals. We affirm.

### Issues

Farris raises three issues for our review, which we consolidate and restate as:

1. Whether the trial court properly excluded two of Farris' witnesses from testifying at his trial; and

2. Whether the trial court properly admitted into evidence three photo arrays that had been used to identify Farris as the offender.

### Facts and Procedural History

On October 31, 2002, sometime around 11:45 p.m., Farris entered the Wood's Citgo gas station located in Hancock County, Indiana. The only employee working that night was Traci Guzman. With Traci was her daughter, Alicia Guzman, who was also an employee but was not working that night. Traci was standing at the cash register and Alicia was sitting behind Traci facing the counter when Farris entered the store. Farris approached the cash register and attempted to purchase some

gum. Farris was wearing a baseball cap and a red, hooded sweatshirt with the hood pulled up over the baseball cap. Farris demanded that Traci give him the money in the cash register. Traci at first thought Farris was joking and refused. Farris then put his hand into the front pocket of his sweatshirt and pointed what appeared to be a gun at Traci. Farris more forcefully stated to Traci, "Give me your money, bitch." Transcript at 36. Traci opened the cash register and gave Farris the money. Farris then exited the gas station. All of these events were captured on the gas station's surveillance cameras. Traci called the police, but they were unable to find Farris. Farris was later arrested in Marion County for another unrelated crime.

Early in the morning on November 1, 2002, both Traci and Alicia provided the police with tape-recorded statements of what transpired. Their descriptions of the offender and the robbery itself were substantially similar. On November 7, 2002, Traci and Alicia went to the Hancock County Sheriff's Department and separately identified Farris from a photographic array as the man who robbed the Wood's Citgo on October 31. Farris was subsequently charged with robbery, a Class C felony.

At Farris' trial, Traci and Alicia both testified to the foregoing facts and identified Farris in court as the offender. Traci and Alicia's testimony was supported by the gas station's surveillance video, which the State compiled into a DVD and showed to the jury. Farris' counsel thoroughly cross-examined both Traci and Alicia. During Traci's testimony, the State sought to have admitted into evidence the photo arrays that had been used on November 7 to identify Farris. In the corner of these photo arrays was printed the words "Indianapolis Police Department." The State

had apparently attempted to redact these words by whiting them out, but the words could still be read from the back of the documents. Farris' counsel had filed a motion in limine prior to trial that sought to bar any mention of the fact that the photo arrays had been obtained from the Indianapolis Police Department. Based on this, Farris' counsel objected to the admission of the photo arrays, but the trial court overruled the objection and the jury was allowed to keep the photo arrays during their deliberations.

During the presentation of Farris' case, he presented an alibi defense. His counsel also sought to have Dr. Roger Terry testify as an expert witness on eyewitness identification. The State objected to Dr. Terry's testimony, arguing it was inadmissible under Indiana Evidence Rules 702 through 704. Farris made an offer to prove, but the trial court excluded Dr. Terry from testifying pursuant to Indiana Evidence Rule 704(b).

On the last day of trial, Farris' counsel attempted to call Floyd Meeks, the owner of Wood's Citgo, to testify. Meeks had not been listed on either Farris' or the State's witness lists, but had been listed as a material witness on the State's charging information. The State objected to having Meeks testify, arguing that his testimony was not relevant and that he had been present in the courtroom throughout the trial while a separation of witnesses order was in place. Farris again made an offer to prove, but the trial court excluded Meeks because his testimony would violate the separation of witnesses order and because he had not been listed on Farris' witness list.

The jury found Farris guilty of robbery, and the trial court sentenced him to eight years. This appeal ensued.

## *Discussion and Decision*

### I.  Standard of Review

■  Farris argues that the trial court abused its discretion when it excluded two of his witnesses from testifying and when it admitted into evidence the photo arrays that had been used to identify him as the offender.  The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court.  *Turner v. Board of Aviation Comm'rs*, 743 N.E.2d 1153, 1165 (Ind.Ct.App.2001), *trans. denied*.  We will reverse a trial court's decision only for an abuse of discretion.  *Id.* An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it.  *Id.*  When evidence is erroneously excluded, reversal is only required if the error relates to a material matter or substantially affects the rights of the parties.  *Id.*

### II.  Exclusion of Witnesses

Farris first contends that the trial court abused its discretion when it excluded Dr. Roger Terry and Floyd Meeks from testifying.  We disagree.

### A.  Dr. Roger Terry

Farris attempted to call Dr. Terry to testify as an expert witness on eyewitness identification.  The State objected to Dr. Terry's testimony, arguing that it was inadmissible under Indiana Evidence Rules 702 through 704.  Farris made an offer to prove.  Without the jury present, Dr. Terry testified to various psychological phenomena that might cause an eyewitness to misidentify a suspect.  The trial court found that Dr. Terry was qualified to testify as an expert, but ruled that his testimony was inadmissible under the Indiana Rules of Evidence.

■  Indiana Evidence Rule 704(b) provides that "[w]itnesses may not testify to opinions concerning . . . whether a witness has testified truthfully. . . ."  During Farris' offer to prove, Dr. Terry concluded, "[w]ell my opinion is that there are enough potential sources of error, either obvious or implied in those witnesses['] statements to make me question the veracity of those statements. . . ."  Tr. at 202.  This testimony by Dr. Terry was his opinion as to whether Traci and Alicia testified truthfully.  The trial court did not abuse its discretion by finding testimony of this nature inadmissible under Indiana Evidence Rule 704(b).

■  The trial court also properly found that Dr. Terry's testimony was inadmissible under Indiana Evidence Rule 702.  Indiana Evidence Rule 702(a) provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Although the trial court did not explicitly state that Dr. Terry's testimony was inadmissible under Indiana Evidence Rule 702, it did at length state:

> In reviewing the matter the jury has before it two eyewitnesses who observed the acts of the night in question face to face.  There is an independent video tape that corroborates the witnesses proximity to the person that they claim to identify.  Both witnesses have independently viewed a photo lineup provided by the police and picked out the Defendant.  At least one of the witnesses has viewed a photo array provided to her by one of the defense attorneys and she identified the Defendant in that photo array.  Then both witnesses identified the Defendant in open Court

and the Court had instructed the jurors that when they review this evidence that the witnesses have, that the jury should consider the testimony of any witness. They should take into account her ability and opportunity to observe, manner and conduct of the witness while testifying, any interest, bias or prejudice the witness may have, any relationship with other witnesses or interested parties and the reasonableness of the testimony considered in light of all of the evidence in the case.

Tr. at 202–03. Based on this statement, the trial court appears to have found that, pursuant to Indiana Evidence Rule 702, Dr. Terry's testimony would not assist the jury in considering the evidence already presented. We have previously stated that "[w]hile expert testimony is surely helpful in many cases, it will be truly necessary in far fewer instances." *Reed v. State*, 687 N.E.2d 209, 213 (Ind.Ct.App. 1997). We concluded that "[t]he concept that eyewitness identification is flawed or subject to serious question in a particular instance may be placed within the jury's realm of understanding by careful cross-examination and by counsel's argument to the jury." *Id.* at 213–214. The trial court here found that based on the evidence presented and Farris' cross-examination of Traci and Alicia, Dr. Terry's testimony was not necessary to place the concept of eyewitness misidentification within the jury's realm of understanding. This was a valid ground for excluding Dr. Terry from testifying.

However, our supreme court has determined that eyewitness identification expert testimony is admissible in certain circumstances. The court has stated that "the circumstances under which expert eyewitness identification testimony is permitted are fact sensitive and must be assessed on a case-by-case basis." *Cook v. State*, 734 N.E.2d 563, 570 (Ind.2000). The court fur-

ther stated, "Cases that more typically lend themselves to the admission of expert eyewitness identification testimony generally involve a single eyewitness and identification is the primary issue at trial." *Id.* at 571. Here, there were two eyewitnesses, Traci and Alicia. Their accounts of the robbery were consistent and supported by the gas station's surveillance video. One of the issues at trial was the identification of Farris, but it was not the primary issue. Farris' alibi defense was also a central issue. Pursuant to *Cook*, the circumstances necessitating expert eyewitness identification testimony were not present. The trial court did not abuse its discretion by excluding Dr. Terry from testifying.

### B. Floyd Meeks

On the last day of the trial, Farris sought to have Floyd Meeks, the owner of Wood's Citgo, testify. Meeks had not been listed on Farris' or the State's witness lists, but had been listed on the State's charging information as a material witness. Meeks had been present in the courtroom throughout the entirety of Farris' trial up to that point. The State objected to Meeks testifying, arguing that his testimony was irrelevant and that it would violate the separation of witnesses order that had been in place since the beginning of the trial. Farris made an offer to prove. Farris' counsel stated that she had learned that individuals in the courtroom had overheard Meeks saying that there had been money missing from the cash register before the robbery on October 31. She also stated that Meeks could testify that Wood's Citgo had been robbed again shortly after October 31.

The trial court refused to allow Meeks to testify. Its first reason for not allowing Meeks to testify was because he had not been on Farris' witness list prior

to trial. The Sixth Amendment to the United States Constitution "guarantees a defendant the right to present witnesses on his behalf." *Borst v. State*, 459 N.E.2d 751, 753 (Ind.Ct.App.1984). However, "while the right to present witnesses is of the utmost importance, it is not absolute." *Roach v. State*, 695 N.E.2d 934, 939 (Ind. 1998). Trial courts "have the discretion to exclude a belatedly disclosed witness when there is evidence of bad faith on the part of counsel or a showing of substantial prejudice to the State." *Williams v. State*, 714 N.E.2d 644, 651 (Ind.1999), *cert. denied*, 528 U.S. 1170, 120 S.Ct. 1195, 145 L.Ed.2d 1099 (2000). In light "of a defendant's right to compulsory process under the federal and state constitutions, there is a strong presumption to allow the testimony of even late-disclosed witnesses." *Id.*

■■ The trial court abused its discretion by excluding Meeks' testimony for Farris' failure to list Meeks on his witness list. There was no evidence presented at trial that Farris' counsel had acted in bad faith. Farris' counsel indicated that she had called Meeks but had been unable to find him. Tr. at 265. Meeks' testimony would not have substantially prejudiced the State. The State had named Meeks as a material witness in its charging information. The State was, thus, aware of whom Meeks was and likely knew and would not have been surprised by his testimony. *See Cook v. State*, 675 N.E.2d 687, 691 (Ind. 1996) (holding that where State named witness in its discovery materials, court was unable to conclude that the State would have been surprised by that witness' testimony and therefore substantially prejudiced). Even if Meeks' testimony had prejudiced the State in some way, a continuance, rather than exclusion, would have been the appropriate remedy. *See id.*

The trial court's second reason for excluding Meeks from testifying was because

he had been present during the trial while a separation of witnesses order was in effect. However, "[i]t has long been held an abuse of discretion to refuse to permit the testimony of a witness due to a violation of a separation of witnesses order if the party seeking to call the witness is without fault in the violation." *Jiosa v. State*, 755 N.E.2d 605, 607 (Ind.2001). Here, the violation of the separation of witnesses order was not Farris' fault. Neither party listed Meeks as a witness. Farris' counsel had been unable to locate Meeks before trial and did not know what he looked like. Farris only determined that Meeks' testimony might be useful on the morning of the final day of the trial. Because Farris was not at fault for violation of the separation of witnesses order, the trial court abused its discretion in excluding Meeks from testifying.

The State argues that exclusion of Meeks was justified because his testimony was irrelevant. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. Relevant evidence is admissible, while irrelevant evidence is inadmissible. Evid.R. 402. Had Meeks testified as Farris' counsel thought he would, he would have indicated that money was missing from the cash register before the robbery, and that the gas station was robbed again shortly after the October 31st robbery. This testimony would have indicated to the jury that possibly the robbery had been committed by an employee or some other third party besides Farris. Such testimony would not have been irrelevant, and, thus, would not have been a proper ground for excluding Meeks from testifying.

■■■ Although we find that the trial court abused its discretion by not allowing

Meeks to testify, this does not end our analysis. "[W]e will find an error in the exclusion of evidence harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights." *Williams*, 714 N.E.2d at 652. The trial court's exclusion of Meeks was harmless error. The evidence presented against Farris was strong. Traci and Alicia's accounts of the robbery were consistent and supported by the surveillance video. Traci and Alicia identified Farris both in the photo arrays and at trial. Meeks' testimony would not likely have weighed in Farris' favor. Farris' counsel had been unable to contact Meeks. She had no idea how Meeks might testify other than by what she had learned from hearsay comments made to her by parties that had overheard Meeks speaking in the courtroom. The trial court did abuse its discretion by excluding Meeks from testifying, but this error was harmless.

### III. The Photo Arrays

Farris next contends that the trial court erred in admitting into evidence the photographic arrays that were used on November 7, 2002, to identify him as the offender. We disagree.

At the trial, the trial court admitted into evidence three photo arrays that had been used to identify Farris as the offender. The photo arrays had been obtained from the Indianapolis Police Department, and in the corner of each array was printed the words "Indianapolis Police Department." Prior to trial, Farris' counsel filed a motion in limine to prohibit any mention of the fact that the photo arrays had been obtained from the Indianapolis Police Department. The record is not clear whether this motion was granted, but when the State introduced the arrays as exhibits at trial, the words "Indianapolis Police De-partment" had been redacted by placing white-out over the words. Although these words had been redacted on the front of the arrays, the words "Indianapolis Police Department" could still be read from the backside of the document. When the State first presented the arrays at trial, Farris' counsel asked to approach the bench. Farris' counsel apparently objected to the admission of the photo arrays during this conference, but the conference was not recorded and we therefore do not know the exact nature of that objection. Farris' objection was overruled, and the State was allowed to introduce the photo arrays into evidence. The jury was later permitted to have the arrays during their deliberations. Farris now argues that the trial court abused its discretion by admitting the photo arrays in an inadequately redacted state because they are inadmissible evidence under Indiana Evidence Rule 404(b) of other crimes committed by Farris.

The State argues that pursuant to Indiana Appellate Rule 31, Farris has waived review of this issue by failing to present a record that was complete with respect to this issue. The State contends that the record is incomplete because the bench conference where Farris' counsel initially objected to the photo arrays was not recorded. Indiana Appellate Rule 31 provides that "[i]f no Transcript of all or part of the evidence is available, a party or the party's attorney may prepare a verified statement of the evidence from the best available sources, which may include the party's or the attorney's recollection." We agree with Farris that pursuant to the plain language of Indiana Appellate Rule 31, a party *may* provide a verified statement of evidence but is not required to do so. Here, Farris has presented a transcript that is substantially complete. Had Farris presented no transcript and no veri-

fied statement of evidence, then Indiana Appellate Rule 31 would require that we find Farris waived review of this issue. *See Graddick v. Graddick,* 779 N.E.2d 1209, 1211 (Ind.Ct.App.2002) (dismissing appellant's appeal because she failed to provide the court of appeals with a transcript or verified statement of evidence). However, that is not the case here. The transcript presented to us by Farris is sufficiently complete with respect to the issue of the photo arrays, and, therefore, Farris has not waived review of this issue under Indiana Appellate Rule 31.

▆▆▆ We move on then to the merits of Farris' claim. The pictures used in the photo arrays are mug shots. Mug shots are not per se inadmissible. *Boatright v. State,* 759 N.E.2d 1038, 1042 (Ind.2001). Instead, they are admissible if "(1) they are not unduly prejudicial and (2) they have substantial independent probative value." *Id.* This court has previously stated that "when the perpetrator's identification is at issue, the photographs have probative value." *Jenkins v. State,* 677 N.E.2d 624, 626 (Ind.Ct.App.1997). One of the issues here was eyewitness identification of Farris. Thus, the mug shots used in the photo arrays did have probative value. Moreover, the use of the photo arrays was not unduly prejudicial to Farris. When the State "has made an effort to disguise the nature of the photographs by redacting criminal information and any other information which obviously identifies the photograph as a 'mug shot,' the photograph is not unduly prejudicial." *Id.* Here, the State did make an effort to disguise the nature of the photos. No names or criminal information for the individuals photographed was included. The State attempted to redact the words "Indianapolis Police Department" by whiting these words out. These words were fully blocked out on the front of the photo ar-

rays but could still be read from the backside. Although some jurors may have taken the time to decipher what these words were, we do not find that this rises to the level of undue prejudice.

However, Farris argues that according to *Dumes v. State,* 718 N.E.2d 1171 (Ind. Ct.App.1999), the trial court erred in admitting the photo arrays. In *Dumes,* the defendant was charged with operating a motor vehicle while privileges are forfeited for life. At his trial, the trial court admitted into evidence Dumes' driving record. The driving record listed multiple convictions and suspensions that were unrelated to the crime with which Dumes was charged. The State had attempted to redact these convictions by blacking them out with a marker. Despite the State's efforts, jurors were still able to see through the blacked out portions and read Dumes' multiple convictions. Dumes was convicted and appealed, arguing that the trial court erred in admitting the inadequately redacted copy of his driving record. Dumes contended that the driving record was inadmissible under Indiana Evidence Rule 404(b) as evidence of other crimes he had committed. We concluded that the trial court erred in admitting the driving record because it was not relevant, and that it was reversible error to submit the driving record to the jury "because it was highly prejudicial." *Dumes,* 718 N.E.2d at 1175–76.

We find that *Dumes* is distinguishable. Here, one of the issues was the identification of Farris as the offender. The photo arrays were relevant evidence regarding the identification of Farris. The photo arrays were not as highly prejudicial to Farris as the driving record was to Dumes. Dumes' driving record explicitly listed his past convictions. The photo arrays here did not list any prior convictions or arrests. In *Dumes,* the jurors could easily

read through the inadequately redacted driving record and learn that Dumes had committed other crimes. The jurors here would have had to go though several mental steps before they were able to conclude that Farris had been arrested in Marion County. First, they would have had to have actually noticed the redacted words on the photo array, and been interested enough in those words to try to figure out what they were. They would have had to then turn the photo array over and read the backwards words "Indianapolis Police Department." Even after reading these words, unless they had some knowledge of the workings of the criminal justice system, they may not have realized that Farris had been arrested in Indianapolis and they would have had no knowledge of what he had been arrested for.

Based on the foregoing, we find that the trial court did not abuse its discretion when it admitted the photo arrays.

### Conclusion

We hold that the trial court did not abuse its discretion when it excluded Dr. Roger Terry from testifying. The trial court did abuse its discretion by excluding Floyd Meeks from testifying but that error was harmless. We also hold that the trial court did not abuse its discretion when it admitted into evidence the three photo arrays that were used to identify Farris as the offender. We therefore affirm Farris' conviction.

Affirmed.

KIRSCH, C.J., concurs.

BAKER, J., concurs with separate opinion.

BAKER, Judge, concurring.

I fully concur with the majority's opinion. However, I write separately to emphasize that courts need to be mindful of research regarding the reliability of eye-witness testimony. Eyewitness identification experts can provide to the jury scientific information about the human memory process and analyze how it is shaped and affected. Nevertheless, Dr. Terry's testimony was properly excluded because eyewitness identification experts should not testify as to the veracity or credibility of a particular eyewitness. Ind. Evidence Rule 704(b).

Eyewitness identification of the wrong person has been the subject of much debate in recent years. Advances in technologies such as DNA testing have led to the release of numerous innocent people who had been convicted of crimes, some of whom had been incarcerated for years. Out of roughly 10,000 sexual assault cases between 1989 and 1996, DNA testing conducted by the Federal Bureau of Investigation revealed that about 2,000 tests were inconclusive, about 6,000 matched or included the primary suspect, and about 2,000 tests excluded the primary suspect. Almost all of the exclusions were in cases where a suspect had been identified as the attacker. Edward Connors, et al., U.S. Dept. of Justice, "Convicted by Juries, Exonerated by Science: Case Studies in the Use of DNA Evidence to Establish Innocence After Trial," available at http://www.ncjrs.org/txtfiles/dnaevid.txt (last visited October 22, 2004).

Scientific research indicates that identification procedures such as lineups and photo arrays produce more reliable evidence when the individual lineup members or photographs are shown to the witness sequentially—one at a time—rather than simultaneously. U.S. Dept. of Justice, National Institute of Justice, "Eyewitness Evidence: A Guide for Law Enforcement", available at http://www.ncjrs.org/pdffiles1/nij/178240.pdf (Last visited on October 21, 2004). Simi-

larly, investigators' unintentional cues (e.g., body language, tone of voice) may negatively impact the reliability of eyewitness evidence. *Id.*

Judge Warren Wolfson noted in a 2000 article that eyewitness identification experts' testimony could enlighten the jury as to research in behavioral science that negates some "common sense" misconception the jury might hold. For instance, research has shown that:

(1) Although low levels of stress may improve an individual's memory of an offender's face, extreme levels often will impair it;

(2) When a weapon is used in a crime, eyewitness identification is less accurate because the witness tends to focus on the weapon;

(3) There is little or no correlation between the degree of confidence expressed by the eyewitness in his or her identification of the offender and the accuracy of that identification;

(4) Witnesses almost invariably think a crime took longer than it did.

Warren Wolfson, "That's the Man! Well, Maybe Not: The Case for Eyewitness Identification Expert Testimony" 26 Litig., Winter 2000, at 6.

In short, we should, as Judge Wolfson argued, encourage judges to read behavioral science literature so they "know what questions to ask and what answers to demand." *Id.* at 64. Judges should also conduct voir dire hearings to decide whether a proffered eyewitness identification expert is qualified and should ensure that these experts do not address the credibility of a specific witness. *Id.* In sum, the evidence provided by eyewitness identification experts can help the jury assess the accuracy and credibility of eyewitnesses, and, as such, can be valuable in cases where the identity of the perpetrator is at issue. Nevertheless, I agree that Dr.

Terry's testimony regarding the truthfulness of Traci and Alicia's testimony was properly excluded under Indiana Rule of Evidence 704(b).