## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 08 2018, 7:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cornell Louis Roberson, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | November 8, 2018 <br><br> Court of Appeals Case No. 18A-CR-752 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Salvador Vasquez, Judge <br><br> Trial Court Cause No. 45G01-1703-F3-13 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Cornell Roberson (Roberson), appeals his conviction for one Count of criminal confinement, a Level 3 felony, Ind. Code § 35-42-3-3(a)(2); one Count of criminal confinement, a Level 5 felony, I.C. § 35-42-3-3(a)(1); one Count of domestic battery, a Level 5 felony, I.C. § 35-42-2-1.3(c)(2); theft, a Class A misdemeanor, I.C. § 35-43-4-2(a); and one Count of interference with reporting of a crime, a Class A misdemeanor, I.C. § 35-45-2-5.

We affirm.

# ISSUE

Roberson presents one issue on appeal, which we restate as: Whether the trial court abused its discretion by admitting certain evidence.

# FACTS AND PROCEDURAL HISTORY

In January 2017, Shavonne Anthony (Anthony) and Roberson met and began dating. After a few days of dating, Roberson moved into Anthony's apartment in Gary, Indiana. Within a week of Roberson living in Anthony's apartment, Roberson's brother (Brother) moved in. Anthony's apartment was on the second floor of a two-story apartment building. The apartment had two entrances, one in the front and one in the back. The front door, which was up a set of stairs, had a metal gate in front of it that was locked by a padlock which needed a key to enter or exit the apartment.

[5]     On the morning of January 19, 2017, Roberson accused Anthony of having a relationship with Brother. Anthony refuted the claims and an argument ensued. During the altercation, Roberson pinned Anthony on the ground using his legs. Roberson then tried to strike Anthony's face with his gun, but Anthony successfully blocked the blow. Then using his closed fist, Roberson punched Anthony in her right eye. Before leaving the apartment, Roberson took Anthony's cellphone to prevent her from calling the police. Anthony found an old phone she once had, and she used it to contact the police.

[6]     At approximately 11:00 a.m., Officer Anthony Boleware (Officer Boleware) of the Gary Police Department arrived at Anthony's apartment. Anthony informed Officer Boleware what had happened. Using Roberson's description, Officer Boleware circled the "midtown area" to find Roberson but was unsuccessful. (Transcript Vol. II, p. 240). Later that day, Anthony used Brother's cellphone to talk to Roberson. Roberson assured Anthony that he would never hit her again, and he returned to Anthony's apartment.

[7]     A week after the battery incident, Roberson evicted Brother from Anthony's apartment. Even with Brother's departure, Roberson's and Anthony's relationship "was kind of rocky." (Tr. Vol. II, p. 78). One time while arguing, Roberson hit Anthony "with a belt buckle." (Tr. Vol. II, p. 79). Roberson afterward threatened Anthony that he would "kill" her if she reported him to the police. (Tr. Vol. II, p. 79). Sometime after battering Anthony with the belt buckle, Roberson boarded up the back door to Anthony's apartment and

explained to Anthony that someone had attempted to breakin. The only way to exit Anthony's apartment was now through the front door.

[8] On the evening of January 31, 2017, Roberson ordered Anthony to go out on the streets to prostitute herself in order to get money for "drugs." (Tr. Vol. II, p. 83). Anthony agreed because she "didn't want to get hit on no more," and she thought complying with Roberson's commands was the only solution to their already strained relationship. (Tr. Vol. II, pp. 81-82). Anthony was only gone for a short time because a patrolling officer stopped her and ordered her to return home. After Anthony explained to Roberson what had happened, Roberson refused to believe Anthony because another woman, who was visiting, gave information that contradicted Anthony's version of events. When the woman left, Roberson and Anthony began arguing. At some point, Roberson armed himself with a hammer. Using the handle-side of the hammer, Roberson repeatedly hit Anthony's arms. To avoid further beating, Anthony moved to the bedroom. Roberson followed Anthony and continued to hit Anthony's arms. Roberson stopped hitting Anthony with the hammer, and he began choking her with his hands. As Anthony struggled to remove Roberson's hands from her neck, the two fell on the floor. Roberson continued choking Anthony, and she lost consciousness for approximately five minutes. When Anthony regained consciousness, she saw Roberson walking "back and forth from the living room to the kitchen." (Tr. Vol. II, p. 88). Roberson returned with a "half of a pool stick" which he had wrapped tape around. (Tr. Vol. II, p. 87). After greasing the pool stick, Roberson "jammed it" several times into

Anthony's "butt." (Tr. Vol. II, p. 88). Anthony told Roberson to "stop" because his actions were hurting her. (Tr. Vol. II, p. 89). Eventually, Roberson stopped.

[9] Roberson thereafter ordered Anthony to go with him to his friend's house that was two blocks away. At the friend's house, Roberson instructed Anthony to offer the friend some of her pain medication or food stamps in exchange for drugs. Anthony successfully executed the transaction. When they returned to Anthony's apartment, Roberson ordered Anthony to take a bath and go to bed. Before leaving Anthony's apartment, Roberson took Anthony's cellphone and house keys, and locked the apartment. At approximately 9:49 p.m., Officer John Artibey (Officer Artibey) encountered Roberson and arrested him for an offense unrelated to him battering Anthony. When Roberson was arrested, he had Anthony's cellphone on his person. Roberson was detained in jail from January 31, 2017, through February 2, 2017.

[10] The following morning, February 1, 2017, Anthony woke up with aching pains from the previous night's battery. Anthony feared for her life and all she wanted to do was to escape from her own apartment. Anthony could not exit through the back door since it was boarded up . She also could not exit through the front door since she did not have a key. Anthony resolved to exit her apartment through a window. As she tried to crawl out of the window and onto a window ledge, she fell to the ground and injured herself. Anthony crawled to the apartment of her neighbor, Tannette McKinney (McKinney) and McKinney called 911. Anthony was then transported to the ER. Due to the

impact of the fall, one of Anthony's lumber vertebrae "burst" and "five portions of her spine" were injured. (Tr. Vol. II, p. 81). Also, Anthony "fractured" her "left ankle." (Tr. Vol. II, p. 212). Due to the severity of her injuries, Anthony was subsequently transported from the Gary hospital to an Indianapolis hospital, where she underwent multiple surgeries and treatment.

[11] On March 23, 2017, the State filed an Information, charging Roberson with criminal confinement as a Level 3 felony; two Counts of criminal confinement, as Level 5 felonies; two Counts of criminal confinement, as Level 6 felonies; domestic battery resulting in serious bodily injury as a Level 5 felony; domestic battery by means of a deadly weapon as a Level 5 felony; two Counts of domestic battery resulting in moderate bodily injury as Level 6 felonies; strangulation as a Level 6 felony; theft as a Class A misdemeanor; and interference with the reporting of a crime as a Class A misdemeanor.

[12] A week before trial, pursuant to Indiana Rule of Evidence 404(b), Roberson filed a motion *in limine*, requesting the exclusion of a specific prior bad act, *i.e.*, his arrest on January 31, 2017, since it was for an unrelated offense. On September 18, 2017, through September 21, 2017, a jury trial was conducted. At the start of trial, the parties litigated the motion *in limine*. Roberson's attorney argued that he wanted the date of Roberson's arrest to be excluded at his trial since Roberson was "arrested on [January] 31st and [Anthony] didn't call 911" until February 1, 2017. (Tr. Vol. II, p. 45). Roberson's attorney contended that the jury would presume that Roberson had been "arrested for something else," and he suggested that the State only needed to say that "at

some point in time [Roberson] was arrested and [Anthony's] cellphone was in his possession." (Tr. Vol. II, p. 44). The trial court granted Roberson's motion *in limine*.

[13] During trial, the State called McKinney, the neighbor who lived in the apartment where Anthony crawled to after she fell out of her apartment. During her testimony, McKinney stated that Anthony sent her a picture depicting Anthony's black eye. On cross examination, when asked to clarify when she purportedly received the photo of the black eye from Anthony, McKinney testified that she received the picture the day before Anthony came crawling to her door, *i.e.*, January 31, 2017. McKinney also claimed that she no longer owned the cellphone which had the picture. Further, McKinney testified that on February 1, 2017, at approximately 3:00 a.m., she heard and saw Anthony outside her apartment claiming that she had been locked out. After McKinney's testimony, the trial court recessed for the day.

[14] At the beginning of the third day, the State requested the trial court to revisit its ruling on the motion *in limine,* arguing that McKinney's testimony was factually impossible. The State alleged that it was not feasible that Anthony sent the photo of the black eye to McKinney on January 31, 2017 since Roberson had been arrested on that same day and Roberson had Anthony's cellphone on his person. Further, the State theorized that McKinney's testimony that Roberson had ejected Anthony from her apartment at 3:00 a.m. on February 1, 2017, was also factually impossible since Roberson was detained in jail from January 31, 2017 through February 2, 2017. The State argued that it should be allowed to

set up "a timeline that [Roberson] was detained" in jail from January 31, 2017 through February 2, 2017, in order to "prove every element of each crime beyond a reasonable doubt" as the facts pertaining to Roberson's detainment "go to the crime of theft, [] confinement[,] and interference with reporting a crime." (Tr. Vol. III, p. 55).

[15] In explaining the importance of withholding the date and period when Roberson was detained in jail, Roberson's attorney argued, "the jury is gonna know that [Roberson] was in jail for another offense, and they're gonna have the inference that he is guilty of another crime." (Tr. Vol. III, p. 58).

[16] After the parties' arguments, the trial court reversed its earlier ruling and concluded that the State

> should have every opportunity to prove [its case] to the jury beyond a reasonable doubt standard. . . . The State has made sufficient ground to allow this information to go before the jury. Now, do I think the word arrest [] should be eliminated? Absolutely, yes. . . . Can [the State] say detained? Absolutely, yes, as well. . . . And—[] of course, it would be improper for the State to make any [] further inference, let alone a suggestion, that it was an arrest of any type. It was simply a detention.

(Tr. Vol. III, pp. 59-60). Roberson's attorney subsequently expressed that he was "okay" with the trial court's ruling, and the trial court noted Roberson's continuing objection on the disputed evidence.

[17] Thereafter, the State elicited the following testimony from Officer Artibey:

Q. Okay. Now I want to draw your attention to January 31st of this year. Were you working that day, do you remember?

A. Yes.

Q. Okay. At approximately 9:49 p.m. on January 31st, did you come into contact with [] Roberson?

A. Yes, sir.

Q. Okay. Subsequent to that interaction, did you end up detaining [] Roberson for approximately 48 hours?

A. Yes, sir.

(Tr. Vol. III, p. 191). Officer Artibey also confirmed that Roberson had Anthony's cellphone during his arrest, that the cellphone was "placed into the evidence locker," and that the cellphone was returned to Anthony on February 27, 2017. (Tr. Vol. III, p. 191). While the trial court had specifically instructed the State to refrain from using the word 'arrest' and simply infer that Roberson had been 'detained,' the State asked Officer Artibey, without any objection, the following questions:

Q. Did you make a report as to the incident on [January] 31st?

A. Yes, sir.

Q. I'm going to show you what's been marked for identification purposes as State's 24. (Tendered). Do you recognize State's [Exhibit] 24?[1]

A. Yes, sir.

Q. And what do you recognize that to be?

A. My arrest report (indicating).

Q. And that's from January 3lst?

A. Yes, sir.

(Tr. Vol. III, p. 192). At the close of the evidence, the jury found Roberson guilty on all Counts.

[18] On February 26, 2018, at the sentencing hearing, the trial court imposed judgment of conviction for the Level 3 felony criminal confinement, Level 5 felony criminal confinement, Level 5 felony domestic battery, Class A misdemeanor theft, and Class A misdemeanor interference with reporting of a crime. Due to double jeopardy concerns, the trial court declined to enter judgment of conviction for the other remaining guilty verdicts. Consequently, the trial court sentenced Roberson to fourteen years for the Level 3 felony criminal confinement conviction. For the two Level 5 felony convictions—

---

[1] Although it was tendered, this exhibit was not enclosed for our review.

domestic battery by means of a deadly weapon and criminal confinement—the trial court imposed three-year sentences on each Count. Lastly, for the Class A misdemeanor convictions—theft and interreference with reporting of a crime—the trial court imposed one-year sentences on each Count. The two criminal confinement sentences were to be served consecutively, and the remaining sentences were to be served concurrently, resulting in an aggregate sentence of seventeen years.

[19] Roberson now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[20] The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Farris v. State*, 818 N.E.2d 63, 67 (Ind. Ct. App. 2004), *trans. denied*. We will reverse a trial court's decision only for an abuse of discretion. *Id*. An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it. *Id*.

[21] Roberson contends that the evidence relating to the date he was arrested and the period of his detainment in jail was inadmissible pursuant to Indiana Evidence Rule 404(b). The State argues that Roberson did not preserve his issue for appeal.

[22] During the State's case-in-chief, McKinney testified, and following her testimony, the State asked the trial court to revisit its ruling on the motion in *limine*. After the parties' arguments, the trial court lifted its prior motion *in*

*limine* ruling, and Roberson's attorney conceded to the reversal, as long as the State did not allude to the fact that Roberson was arrested on January 31, 2017 for an unrelated offense. Also, Roberson's attorney articulated that he would object when the State introduced the evidence, but the trial court told him that it was not necessary.

[23] In *Hayworth v. State*, 904 N.E.2d 684 (Ind. Ct. App. 2009), this court addressed the proper procedure for using continuing objections. We cautioned that if "the trial court does not specifically grant the right to a continuing objection, it is counsel's duty to object to the evidence as it is offered in order to preserve the issue for appeal." *Id.* at 692. Because the trial court informed Roberson's counsel that it was not necessary to make an objection when the State sought to elicit testimony on the contested evidence, we find the trial court's comment was sufficient to establish the showing of an ongoing objection. Thus, Roberson preserved his claim for appellate review.

[24] Proceeding to the merits, Indiana Evidence Rule 404(b) provides that evidence of a crime, wrong, or other act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evidence Rule 403 provides, in turn, that evidence, even if relevant, should be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly

presenting cumulative evidence." Therefore, when the State seeks to use evidence of a crime, wrong, or other act, the court must (1) determine whether the evidence is relevant to a matter at issue other than the defendant's propensity to commit the charged act and, if so, (2) balance the probative value of the evidence against its prejudicial effect. *Hicks v. State*, 690 N.E.2d 215, 221 (Ind. 1997). We review a trial court's ruling for an abuse of discretion. *Spencer v. State*, 703 N.E.2d 1053, 1057 (Ind. 1999).

[25] Turning to the record, on the third day of Roberson's trial, the State requested the trial court to lift its order on the motion *in limine.* In arguing its claim, the State sought to use the date when Roberson was detained in jail to prove at least the theft charge. For the theft allegation, the State had to prove Roberson (1) knowingly or intentionally; (2) exerted unauthorized control over property of another person; (3) with intent to deprive the other person of any part of its value or use. I.C. § 35-43-4-2(a). Accordingly, the State planned to introduce evidence of Anthony's cellphone being in Roberson's possession after he was booked in jail as the ground for that charge. While reversing its prior ruling on the motion *in limine*, the trial court reasoned that the "State should have every opportunity to prove [its case] to the jury beyond a reasonable doubt standard." (Tr. Vol. III, p. 59).

[26] Officer Artibey later testified that when he "encountered" Roberson on January 31, 2017, he had Anthony's cellphone on his person, and that Roberson was detained "for approximately 48 hours." (Tr. Vol. III, p. 191). Officer Artibey added that Anthony's cellphone was stored in the evidence locker and returned

to Anthony on February 27, 2017. While the trial court had specifically instructed the State not to mention the word arrest, the State asked Officer Artibey what State's Exhibit 24 related to, and Officer Artibey stated that it was the "arrest report" he prepared after arresting Roberson on January 31, 2017. (Tr. Vol. III, p. 192).

[27] Roberson then cites to the many questions the jury asked Officer Artibey regarding *why* and *how long* he was detained in jail; however, after our review of the record, we find that the trial court did not allow these jury questions to be made to Officer Artibey in open court. Moreover, we find unpersuasive Roberson's assertion that the jury overestimated the value of the evidence relating to the date and period of his detainment to imply that that he was arrested on unrelated charges on January 31, thereby painting him as a generic criminal with bad character. Roberson's argument that the jury was left no choice but to infer that the detention was based on unrelated charges lacks merit. Roberson did not ask for a limiting instruction at the time the evidence was entered, and the jury members were specifically instructed that Roberson could not be convicted on speculation. "When the jury is properly instructed, we will presume they followed such instructions." *Weisheit v. State*, 26 N.E.3d 3, 20 (Ind. 2015).

[28] Here, we find that the risk of unfair prejudice was severely limited by the paucity of details about the reason or manner of Roberson's detention. No facts about the underlying motive for the arrest were elicited, and no further development about the arrest occurred outside of what was needed to show

Anthony's cellphone was in Roberson's possession. Therefore, the admission of that evidence went to a permissible purpose, to prove the theft charge, and the risk of unfair prejudice did not substantially outweigh the probative value of that evidence. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the challenged evidence.

## CONCLUSION

[29] Based on the foregoing, we hold that the trial court did not abuse its discretion by permitting the State to present evidence of Roberson's detainment.

[30] Affirmed.

[31] Vaidik, C. J. and Kirsch, J. concur