## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 11 2019, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James Spangler
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Larry Dale Bundy, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 11, 2019

Court of Appeals Case No.
18A-CR-19

Appeal from the Lawrence
Superior Court

The Honorable Michael Robbins,
Judge

Trial Court Cause No.
47D01-1708-F5-1231

**Tavitas, Judge.**

# Case Summary

Larry Dale Bundy Jr. appeals his convictions for criminal confinement, a Level 5 felony; two counts of strangulation, Level 6 felonies; domestic battery, a Level 6 felony; and intimidation, a Level 6 felony. We affirm in part, reverse in part, and remand.

# Issues

Bundy raises three issues, which we restate as:

I.  Whether the trial court erred by excluding Bundy's three late-discovered witnesses.

II. Whether the evidence is sufficient to sustain Bundy's conviction for criminal confinement, a Level 5 felony.

III. Whether one of Bundy's strangulation convictions should be vacated pursuant to the continuous crime doctrine.

# Facts

Bundy and his wife, Jacey, were estranged, and their relationship was contentious. In late July 2017 and early August 2017, the couple was living apart but had several interactions that resulted in 911 calls. On July 30, 2017, Jacey allowed Bundy into her hotel room at the Mark Three Motel in Bedford. Jacey alleged there was a physical altercation between herself and Bundy. Sergeant Timothy Chen of the Bedford Police Department dispatched officers

to the motel in response to a 911 call regarding a domestic disturbance between Bundy and Jacey. Jacey later went to the hospital for treatment.

[4] On August 15, 2017, Jacey went with Bundy to his hotel room at the Rosemont Motel in Bedford. They were watching a movie, and Bundy started drinking alcohol. Bundy got upset with Jacey, and Jacey told Bundy that she was going to sleep. Jacey woke to Bundy "dragging [her] out of the bed by [her] hair and [she] had no clothes on." Tr. Vol. III p. 23. Jacey was on the floor between the two beds, and Bundy started hitting and kicking her on her back, legs, arms, stomach, chest, and head. Bundy put a blanket over Jacey and held it tightly over her head such that she "couldn't breathe through [her] nose or [her] mouth." *Id.* at 25. Bundy also put both of his hands around Jacey's neck. At one point, Bundy put his foot across Jacey's neck, and she "couldn't breathe." *Id.* at 26. At some point, Jacey was able to lock herself in the bathroom and call 911.

[5] Sergeant Chen was dispatched to the Rosemont Motel regarding a domestic disturbance. When Sergeant Chen arrived, he heard a woman screaming. Sergeant Chen started hitting the door with his flashlight and yelling for the occupants to open the door. The officers obtained a key and opened the door, and they discovered Bundy sitting on the bed. The officers also discovered Jacey, who was "visibly upset, shaking, [and] crying." Tr. Vol. II p. 162. Jacey's hair was "crazy" and disheveled like someone had "yanked it." *Id.* at 162-63. Sergeant Chen also noticed blood on Jacey's nose, red marks on her face, and large red marks on her back; her eyelid was "busted and swollen and

it was bleeding," and she had redness on her throat. *Id.* at 166. When Jacey went into the bathroom to get dressed, Sergeant Chen saw blood smeared on the floor and the sink. Jacey was transported to the hospital.

[6] The State charged Bundy with nine counts related to the July 30, 2017, and August 15, 2017, events. The following counts were related to July 30, 2017: Count II, criminal confinement, a Level 5 felony; Count V, strangulation, a Level 6 felony; Count VII, domestic battery, a Level 6 felony; and Count IX, intimidation, a Level 6 felony. The following counts were related to August 15, 2017: Count I, criminal confinement, a Level 5 felony; Count III, strangulation, a Level 6 felony; Count IV, strangulation, a Level 6 felony; Count VI, domestic battery, a Level 6 felony; and Count VIII, intimidation, a Level 6 felony.

[7] On October 13, 2017, Bundy filed a motion for a speedy trial, which the trial court granted, and the matter was set for jury trial on November 16, 2017. On October 17, 2017, the trial court issued a pretrial order, which provided in part: "The Parties will exchange the lists of Witnesses, all exhibits to be utilized at trial, and all other discovery, on or before October 30, 2017." Appellant's App. Vol. II p. 37. Bundy filed a witness list on November 1, 2017, in violation of the pretrial order. At a final pretrial conference on November 1, 2017, the trial court allowed Bundy's late witness list to be filed but emphasized that further "post deadlines" filings would not be allowed. Tr. Vol. II p. 7. The trial court also allowed depositions to be performed. Those depositions were completed on November 13, 2017. Through the depositions, Bundy apparently identified additional witnesses that he wanted to depose.

[8] Bundy filed a written motion to continue the trial on November 14, 2017. Bundy sought additional time to depose additional witnesses "and obtain necessary documents." Appellant's App. p. 67. Bundy stated that the delay should be charged to the State. Bundy filed a second written motion to continue the trial on November 15, 2017. In that motion, Bundy stated: "If there is congestion on the Court's calendar and Bundy's request would cause the jury trial to be set outside of the 70-days as specified by Ind. Criminal Rule 4, the reason for the continuance would be charged to Bundy and not used as a reason for discharge under Rule 4." *Id.* at 73-74. The trial court denied the motions. Bundy also filed an amended witness list, adding Lea Rennert, an investigator with the Lawrence County Public Defender Agency; Officer Dennis Parsley of the Bedford Police Department; and Major Rob Herr of the Bedford Police Department.

[9] On the morning of the trial, Bundy made an oral motion to continue the trial, which the trial court denied. During a meeting in chambers regarding the late-disclosed witnesses, the trial court stated: "[P]lus I don't believe that this Leah [sic] Rennert person has anything to offer given what I've understood her testimony's gonna be. Rob Herr, you told me before we went on the record that he doesn't remember anything." Tr. Vol. II p. 21. Bundy's counsel stated: "I have not had an opportunity to speak to him." *Id.* Bundy's counsel also noted that Officer Parsley "also responed [sic] to a 9-1-1 call made [b]y Jacey on July 29th or so." *Id.* The trial court did not allow the three witnesses to testify.

[10] At the jury trial, Bundy testified that the injuries to Jacey were the result of consensual sexual activity, that Jacey battered him on August 15, 2017, and that Jacey had threatened to file false battery charges against him. The jury found Bundy guilty of the offenses related to August 15, 2017, but not guilty of the offenses related to July 30, 2017. Bundy was convicted of Count I, criminal confinement, a Level 5 felony; Count III, strangulation, a Level 6 felony; Count IV, strangulation, a Level 6 felony; Count VI, domestic battery, a Level 6 felony; and Count VIII, intimidation, a Level 6 felony. The trial court sentenced Bundy to concurrent sentences of six years on the criminal confinement conviction and two and one-half years each on the other convictions with two years suspended to probation.

## Analysis

### I. Exclusion of Witnesses

[11] Bundy first argues that the trial court erred by excluding three late-disclosed witnesses. Specifically, Bundy contends that the trial court erred by excluding the testimony of Officer Parsley, Major Herr, and Lea Rennert.

[12] The State argues that this issue is waived by Bundy's failure to make an offer of proof. An offer of proof is required to preserve an error in the exclusion of a witness's testimony. *Dylak v. State*, 850 N.E.2d 401, 408 (Ind. Ct. App. 2006), *trans. denied*. Indiana Evidence Rule 103(a)(2) provides: "If the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." An offer of proof allows the trial

and appellate courts to determine the admissibility of the testimony, as well as the potential for prejudice if it is excluded. *Dylak*, 850 N.E.2d at 408.

[13] Bundy provided little information regarding the proposed testimony of the three witnesses. During a meeting in chambers, the trial court stated: "[P]lus I don't believe that this Leah [sic] Rennert person has anything to offer given what I've understood her testimony's gonna be. Rob Herr, you told me before we went on the record that he doesn't remember anything." Tr. Vol. II p. 21. Bundy's counsel stated: "I have not had an opportunity to speak to him." *Id.* Bundy's counsel also noted that Officer Parsley "also responed [sic] to a 9-1-1 call made [b]y Jacey on July 29th or so." *Id.*

[14] Bundy failed to inform the trial court of the substance of the witnesses' testimony by an offer of proof, and the substance of the testimony was not apparent from the context or from the conversation with the trial court in the record. Bundy's vague statements are insufficient to constitute an offer of proof. Having failed to make an offer of proof, Bundy has waived the claim of error regarding the exclusion of the late-disclosed witnesses.

[15] Waiver notwithstanding, we note that "[t]he Sixth Amendment to the United States Constitution 'guarantees a defendant the right to present witnesses on his behalf.'" *Townsend v. State*, 26 N.E.3d 619, 627 (Ind. Ct. App. 2015) (quoting *Farris v. State*, 818 N.E.2d 63, 69 (Ind. Ct. App. 2004), *trans. denied*), *trans. denied*. "[W]hile the right to present witnesses is of the utmost importance, it is not absolute." *Id.* Trial courts "have the discretion to exclude a belatedly

disclosed witness when there is evidence of bad faith on the part of counsel or a showing of substantial prejudice to the State." *Id.* In light "of a defendant's right to compulsory process under the federal and state constitutions, there is a strong presumption to allow the testimony of even late-disclosed witnesses." *Id.* "[W]e will find an error in the exclusion of evidence harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights." *Id.* at 629.

[16] Under the circumstances here, we see no evidence of bad faith on the part of Bundy's counsel or substantial prejudice to the State by allowing the late-disclosed witnesses. Even if the trial court erred by excluding the witnesses, however, we conclude that any error was harmless.

[17] According to Bundy, "the effect of the witnesses would have been to bolster [Bundy's] defense that Jacey had made a series of false allegations against [Bundy] and that the allegations at trial were part of that pattern." Appellant's Br. p. 39. Major Herr and Officer Parsley would have apparently testified regarding their responses to other 911 calls by Jacey. This evidence was, however, cumulative of other evidence admitted at the trial. Jacey testified that she had made multiple 911 calls in late July and early August. Other officers testified that they responded to other 911 calls from Jacey. Bundy testified that Jacey chased him with a knife on July 25th and that he made a 911 call on July 25th. A transcript of the 911 call was read to the jury. In the 911 call, Bundy tells the dispatcher that: (1) he told Jacey he wanted a divorce; (2) Jacey "won't leave [Bundy] alone;" (3) Jacey is threatening to "press battery charges against

[him];" and (4) the argument between Bundy and Jacey was verbal, not physical. Tr. Vol. III p. 122.

[18] Other evidence was presented that officers responded to multiple 911 calls by Jacey and that Jacey had threatened to file battery charges against Bundy. Given that the proposed witnesses' testimony would have been cumulative of other evidence presented at the trial, Bundy's substantial rights were not impacted by the exclusion of the witnesses. Any error was harmless.

## II. *Sufficiency of the Evidence*

[19] Bundy argues that the evidence is insufficient to sustain his conviction for criminal confinement, a Level 5 felony. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *reh'g denied, cert. denied*, 475 U.S. 1031, 106 S. Ct. 1241 (1986)), *reh'g denied, cert. denied*, 137 S. Ct. 1082 (2017). Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84); *see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a

reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[20]     The offense of criminal confinement is governed by Indiana Code Section 35-42-3-3, which provides: "A person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement." The offense is a Level 5 felony if "it results in bodily injury to a person other than the confining person." Ind. Code § 35-42-3-3(b)(1)(C). "Bodily injury" is "any impairment of physical condition, including physical pain." Ind. Code 35-31.5-2-29.

[21]     Bundy challenges only the bodily injury element of the conviction. Bundy argues that any bodily injury resulted from the domestic battery or strangulation actions rather than the criminal confinement. Bundy contends that the bodily injury was not a "*direct* result of the *actual* confinement." Appellant's Br. p. 44 (emphasis in original). The State counters that: "Sufficient evidence showed that Bundy confined Jacey on more evidence than that merely proving domestic battery or strangulation." Appellee's Br. p. 25.

[22]     The State points out that Jacey testified Bundy left fingerprint bruises on her legs and chest while he was "holding [her] down and trying to keep [her] from leaving or getting away." Tr. Vol. III p. 37. This evidence was independent of the evidence of injuries to Jacey from the domestic battery, in which the State alleged that Bundy kicked and punched Jacey and pulled her hair; and regarding the strangulations, the State alleged that Bundy applied pressure to

her neck and obstructed her nose and mouth. The evidence is sufficient to sustain Bundy's conviction for criminal confinement, a Level 5 felony.

### III. Continuing Crime Doctrine

[23] Next, Bundy argues that his two convictions for strangulation violate the continuous crime doctrine. "The continuous crime doctrine is a rule of statutory construction and common law limited to situations where a defendant has been charged multiple times with the same offense." *Hines v. State*, 30 N.E.3d 1216, 1219 (Ind. 2015). The doctrine "establishes that actions that are sufficient to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Pugh v. State*, 52 N.E.3d 955, 970 (Ind. Ct. App. 2016), *trans. denied*. "The doctrine involves those instances where a defendant's conduct amounts to only a single, chargeable crime such that the State is prevented from charging a defendant twice for the same offense." *Id.* "The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime." *Hines*, 30 N.E.3d at 1219.

[24] Count III alleged that, on August 15, 2017, Bundy "in a rude, insolent or angry manner, did knowingly apply pressure to the throat or neck of Jacey L. Bundy in a manner that impeded normal breathing or blood circulation of Jacey L. Bundy." Appellant's App. Vol. II p. 57; *see* Ind. Code § 35-42-2-9(c)(1) (defining strangulation in the context of applying "pressure to the throat or neck

of another person"). Count IV alleged that, on August 15, 2017, Bundy "in a rude, insolent or angry manner, did knowingly obstruct the nose or mouth of Jacey L. Bundy in a manner that impeded normal breathing or blood circulation of Jacey L. Bundy." *Id.*; *see* Ind. Code § 35-42-2-9(c)(2) (defining strangulation in the context of obstructing "the nose or mouth of the [sic] another person"). Bundy argues that these two convictions violate the continuous crime doctrine.

[25] We addressed a similar issue in *Gomez v. State*, 56 N.E.3d 697 (Ind. Ct. App. 2016). There, the defendant was convicted of three counts of domestic battery, Class A misdemeanors, for a three-minute physical altercation in which he grabbed a woman, slammed her into a wall, and pulled her hair. We concluded that "the acts alleged . . . were sufficiently compressed in terms of time, place, singleness of purpose, and continuity of action so as to constitute a single transaction for purposes of the continuous crime doctrine." *Gomez*, 56 N.E.3d at 704. Accordingly, we reversed two of the defendant's domestic battery convictions.

[26] Here, the State presented evidence that Jacey fell asleep and was awakened by Bundy dragging Jacey out of the bed by her hair. Over the next few minutes, Bundy had Jacey between the two beds and was hitting and kicking her. During the incident, Bundy placed a blanket tightly across Jacey's head, and Jacey "couldn't breathe through [her] nose or [her] mouth." Tr. Vol. II p. 25. Bundy also "strangled" Jacey with "both hands on [her] neck" and put his foot "across [her] neck," and Jacey "couldn't breathe." *Id.* at 25-26. The two

strangulations were part of the same physical altercation between Bundy and Jacey. These strangulations were sufficiently compressed in terms of time, place, singleness of purpose, and continuity of action so as to constitute a single transaction for purposes of the continuous crime doctrine. Consequently, we reverse Bundy's conviction for Count IV, strangulation, a Level 6 felony.

## Conclusion

Any error in the exclusion of Bundy's late-disclosed witnesses was harmless. The evidence is sufficient to sustain his conviction for criminal confinement, a Level 5 felony, but we reverse Bundy's conviction for Count IV, strangulation, a Level 6 felony, pursuant to the continuous crime doctrine. We affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

Brown, J., and Altice, J., concur.